Dewayne **HULSEY**, Petitioner,

v.

Willis **SARGENT**, Respondent.

Civ. No. PB–C–81–002.

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

April 15, 1993.

Everett C. Johnson, Jr., Latham & Watson, Washington, DC, for plaintiff.

Jack Ward Gillean, Office of the Governor, State of Ark., Little Rock, AR, for defendant.

*MEMORANDUM OPINION*

EISELE, District Judge.

Before the Court is Petitioner's Third Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. Petitioner alleges three specific violations of his constitutional rights arising during the penalty phase of his bifurcated trial, and a fourth, generalized, claim of ineffective assistance of counsel during both trial phases, on direct appeal and in relation to collateral proceedings.[1] The Court will order the writ to issue on two of the four grounds. It will not reach the other two claims.

### I. CLAIMS AND PROCEDURAL POSTURE

Petitioner was convicted of capital felony-murder by a jury in the Circuit Court of St. Francis County, Arkansas for the murder and robbery of John Easley. Petitioner was found to have shot the victim seven times while robbing a service station. On November 6, 1975 he was sentenced to death by electrocution by the same jury pursuant to the Arkansas capital murder statute Ark. Stat.Ann. §§ 41–4701 *et seq.* (Supp.1973) that was in effect at the time.

Petitioner's four stated grounds for relief from his sentence of death are as follows:

(a) The law under which petitioner was convicted was unconstitutional in that it did not permit the jury to consider all mitigating circumstances at all relevant times. *See Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

(b) The rendering of the death sentence violated Petitioner's Eighth and Fourteenth Amendment rights because Petitioner was compelled to demonstrate

---

1. It should be noted at the start that petitioner is not attacking his conviction. Rather, he contends that the death penalty imposed upon him must be set aside, leaving him, unless retried, with a sentence of life imprisonment without parole.

that mitigating circumstances outweighed aggravating circumstances, whereas the Constitution required the State to demonstrate that aggravating circumstances outweighed mitigating circumstances, and whereas prevailing community values, as evidenced by the contemporaneously enacted Arkansas death penalty statute, Ark.Stat.Ann. § 41–1301 *et seq.* (1977), required a death sentence be rendered only if aggravating circumstances outweighed mitigating circumstances beyond a reasonable doubt.

(c) The prosecutor's argument about the brutality of the crime and the judge's instruction that the jury could consider a photograph of the victim as evidence of the ferocity of the crime, presented to the jury impermissible non-statutory aggravating circumstances on which to base its determination of sentence all in violation of Ark.Stat.Ann. § 41–4711 (1972), Arkansas Constitution, Article 7, Section 23, and the Eighth and Fourteenth Amendments.

(d) Petitioner was represented during trial by counsel so inadequate as to effectively deprive him of his Sixth and Fourteenth Amendment rights to representation by counsel.

Third Amended Petition, pp. 5–6.

Under Arkansas' then applicable capital-murder procedures, once a defendant was found guilty of capital murder, a separate sentencing hearing was held at which the State was permitted to introduce evidence of aggravating circumstances, and the defendant evidence of mitigating circumstances. The State's burden was to prove the existence of aggravating circumstances beyond a reasonable doubt while the defendant needed merely to establish the mitigating factors as more likely to exist than not.[2]

The jury in petitioner's case determined that the following aggravating circumstance existed: (1) that petitioner "knowingly created a great risk of death to one or more persons in addition to the victim" during the commission of the crime; and (2) that the crime was committed for "pecuniary gain." The jury found no mitigating circumstances but commented:

[w]e, the jury, have found, in our judgment that Dewayne Hulsey had a very poor home life. We do feel that it plays a minor part in his behavior, but not to the extent of committing this brutal crime.

2. Section 41–4709 sets forth the procedure by which the jury arrived at its verdict:

Trial Procedure—Verdict in writing—A person charged with a capital felony shall be given a jury trial and sentenced pursuant to the following procedure:

(a) After presentation of all evidence and witnesses to be offered by the State and/or the defendant as to the guilt or innocence of the defendant, instructions to the jury, and argument by counsel, the jury shall retire and consider the case.

(b) If the jury finds the defendant guilty of a capital felony, the same jury shall sit again to determine whether the defendant shall be sentenced to death or life imprisonment without parole.

(c) In the proceeding to determine sentence, evidence may be presented as to any matters relevant to sentence and shall include matters relating to any of the aggravating or mitigating circumstances enumerated in Sections 11 [§ 41–4711] and 12 [§ 41–4712] of this act. The State and the defendant or his counsel shall be permitted to present argument for or against the sentence of death.

(d) After hearing all the evidence as to sentence, the jury shall again retire and render a sentence based upon the following:

(i) whether beyond a reasonable doubt sufficient aggravating circumstances, as enumerated in Section 11 [§ 41–4711] of this act, exist to justify a sentence of death;

(ii) whether sufficient mitigating circumstances, as enumerated in Section 12 [§ 41–4712] of this act, exist to justify a sentence of life imprisonment without parole.

(e) The jury in rendering its verdict shall set forth in writing its findings as to each of the aggravating or mitigating circumstances enumerated in Sections 11 [§ 41–4711] and 12 [§ 41–4712] hereof and shall set forth in writing its conclusion:

(i) that sufficient aggravating circumstances (do or do not) exist beyond a reasonable doubt to justify a sentence of death;

(ii) that there are (or are not) sufficient mitigating circumstances to outweigh the aggravating circumstances.

(f) If the jury does not make the findings requiring the death sentence by unanimous verdict, the court shall impose sentence of life imprisonment without parole.

Quoted in *Hulsey v. State*, 261 Ark. 449, 549 S.W.2d 73, 80 (1977). Since, under Arkansas law, the mitigating factors did not outweigh the aggravating factors, death was the required sentence.

Petitioner, upon direct appeal, was denied relief by the Arkansas Supreme Court in *Hulsey v. State*, 261 Ark. 449, 549 S.W.2d 73 (1977), *cert. denied*, 439 U.S. 882, 99 S.Ct. 220, 58 L.Ed.2d 194 (1978). He then petitioned for collateral relief under then-existing Rule 37 of the Arkansas Rules of Criminal Procedure. The petition was denied as was a subsequent petition for rehearing and for amendment of the original petition. *Hulsey v. State*, 268 Ark. 312, 595 S.W.2d 934, *reh'g denied*, 268 Ark. 315, 599 S.W.2d 729, *cert. denied*, 449 U.S. 938, 101 S.Ct. 337, 66 L.Ed.2d 161 (1980). The state concedes that petitioner has exhausted his available state remedies. *See Humphrey v. Cady*, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972).

In 1981 this Court declined to find that petitioner had raised his death-qualified jury issue under *Grigsby v. Mabry*, 483 F.Supp. 1372 (E.D.Ark.1980), *modified*, 637 F.2d 525 (8th Cir.1980), in a timely manner during state court proceedings and could not agree with petitioner's other arguments against procedural default. *Hulsey v. Sargent*, 550 F.Supp. 179 (E.D.Ark.1981). The petition currently pending is Mr. Hulsey's third amended petition, but is not, it should be noted, a successive petition under *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1973).

## II. THE UNANIMITY ISSUE UNDER *MILLS v. MARYLAND*

[1] Petitioner alleges that the jury was instructed in such a way as to preclude a finding of any mitigating circumstance, or circumstances, unless the jurors *unanimously* found it, or them, to exist. In its most extreme applications, eleven jurors could agree as to the existence of all statutory and other non-statutory mitigating circumstances, yet no mitigating factors would be found to exist; or *all* could agree that *some* mitigating circumstances exist and that they outweigh the aggravating factors but disagree as to which particular ones.

Petitioner asks the Court to apply *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and the cases of *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), and *McKoy v. North Carolina*, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990). The latter two teach, respectively, that the jury may not be precluded from giving effect to all evidence in mitigation and that state statutes or instructions imposing the so-called "unanimity" requirement are violative of the Eighth and Fourteenth Amendments.[3]

### A. The Mills Decision

In *Mills*, the Supreme Court vacated petitioner's death sentence finding that the *mere possibility* that the sentencing jury believed itself bound to find mitigating circumstance by a unanimous 12–0 vote violated the Eighth Amendment. Critically, the Court did not base its decision on any evidence of jury confusion. Indeed, the Maryland Court of Appeals, on direct appeal, found itself in agreement with petitioner that "if the Maryland statute and form were read as petitioner suggested, jurors would be improperly prevented from giving due consideration to miti-

---

**3.** The Respondent's position on this claim is stated in his Response to Third Amended Petition as follows:

> If the Court reaches the merit of the petitioner's argument, the respondent notes that the petitioner relies on the Supreme Court cases of *Lockett v. Ohio*, 438 U.S. 586 [98 S.Ct. 2954, 57 L.Ed.2d 973] (1978) and *Mills v. Maryland*, [486 U.S. 367] 108 S.Ct. 1860 [100 L.Ed.2d 384] (1988), in support of his claim that errors in the penalty phase of his trial created an unconstitutional risk that the death sentence was arbitrarily and capriciously imposed in his case.

> There are strong similarities between the instant case and the verdict forms/instructions utilized in the *Mills* case. There are also distinctions that can be drawn. However, the respondent finds it difficult to draw any meaningful distinctions between the case at bar and the *Mills* case in terms of the constitutional issue presented. Therefore, the respondent stands on the foregoing procedural arguments and will not address the merits of the petitioner's claim at this time.

So Respondent acknowledges the merits of this claim but insists that it is foreclosed by "procedural arguments."

gating evidence." 486 U.S., at 372, 108 S.Ct., at 1864. The Maryland court denied relief because it interpreted the jury instructions to require acceptance or rejection of mitigating circumstances by unanimous vote. So a finding of 'no' to a mitigating circumstance reflected the agreement of 12 jurors that the circumstance did not exist. The United States Supreme Court disagreed.

Specifically, two decisions interpreting the requirements of the Constitution were implicated. In the first, *Lockett, supra,* a plurality of the Court decided that a "sentencer [may] not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." 438 U.S., at 604, 98 S.Ct., at 2964–65. *Lockett* involved the Ohio death penalty statute which limited the jury's consideration to specified mitigating factors, thereby precluding the individualized sentencing required by the constitution in all capital cases. This conclusion was adopted by a majority of the Court, which held, in *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982):

> Just as the state may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law,* any relevant mitigating evidence. In this instance, it was as if the trial judge had instructed a jury to disregard the mitigating evidence Eddings proffered on his behalf. The sentencer ... may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration.

*Id.* at 113–15, 102 S.Ct., at 876–77 (emphasis in original).

Reiterating the more urgent need for certainty in capital sentencing, the Court in *Mills* quoted with approval the *Lockett* dictum: "the risk that the death penalty might be imposed in spite of factors which may call for a less severe penalty ... is unacceptable

and incompatible with the commands of the Eighth and Fourteenth Amendments." 438 U.S., at 605, 98 S.Ct., at 2965. It was this risk (that the jury might have failed to give effect to the mitigating circumstances owing to the unanimity requirement) that prompted the Court to remand for resentencing.[4]

In 1990 the Court handed down a decision applying *Mills* and affirming its analysis of the unanimity issue. Petitioner in *McKoy v. North Carolina, supra,* challenged the North Carolina sentencing scheme on the *Mills* ground. In North Carolina, jurors were verbally instructed, as well as instructed in their verdict forms, that a unanimous finding of the existence of mitigating circumstances was required. The North Carolina Supreme Court attempted to distinguish *Mills* on two grounds. First, that unlike Maryland, North Carolina permits the sentencing body to impose life imprisonment "if it finds that the aggravating circumstances are not sufficiently substantial to call for the death penalty, even if it has found several aggravating circumstances and no mitigating circumstances." *North Carolina v. McKoy,* 323 N.C. 1, 40, 372 S.E.2d 12, 33 (1988). And second, it interpreted *Mills* to allow states to define for themselves as "irrelevant" any evidence on mitigation not found unanimously. Rejecting these arguments the Court reiterated the *Mills* emphasis on *Lockett* and *Eddings* and remanded the case to the state court for resentencing.

B. *Retroactive Application of New Procedural Rules Under Teague v. Lane*

Before the Court can reach the issues raised as procedural bars it must address retroactivity as a threshold matter. *See Butler v. McKellar,* 494 U.S. 407, 411–13, 110 S.Ct. 1212, 1216, 108 L.Ed.2d 347 (1990); and *Saffle v. Parks,* 494 U.S. 484, 485–87, 110 S.Ct. 1257, 1259, 108 L.Ed.2d 415 (1990). Succinctly put, the issue is whether the rule of *Mills* is a new rule subject to recently imposed restrictions on retroactive application or whether it merely extends or expands upon a previously existing strand of the juris-

---

4. It should be observed that the defects in a requirement of unanimity stem *directly* from the *Lockett–Eddings* line of cases, a fact that will be of considerable import to the determination of whether *Mills* is a new rule for retroactivity purposes.

prudence relating to mitigation in death-penalty cases.

The retroactivity rule was established in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). (Plurality opinion). The issue advanced by petitioner there was the unconstitutional use of peremptory challenges by the prosecutor to remove all black jurors from the petit panel in violation of the Sixth Amendment, *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and in violation of the equal protection clause, *Allen v. Hardy,* 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) (per curiam). The Court rejected the equal protection claim on the ground that petitioner's conviction was final before *Batson* was handed down and did not reach the merits of the Sixth Amendment issue because it could not be applied retroactively. Capital cases were brought within the ambit of *Teague* in another 1988 Term case, *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), decided without the benefit of briefing or argument.

A new rule exists, according to the *Teague* plurality, when it either "breaks new ground or imposes a new obligation on the States or the Federal Government" or "if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Id.*, 489 U.S., at 301, 109 S.Ct., at 1070. The Court notes that the second formulation could conceivably encompass any factual cluster presenting a variation on a rule. As Justice Brennan observed in his own dissent: "[v]irtually no case that prompts a dissent on the relevant legal point, for example, could be said to be '*dictated*' by prior decisions," would be therefore new, and would be ineligible for retroactive application. *Id.*, 489 U.S., at 333, 109 S.Ct., at 1088.[5]

**1. Is the Rule in *Mills* New?**

The State argues that the rule of *Mills* is a new one and is therefore not entitled to retroactive application. Its analysis does not incorporate a discussion of the possibility that *Mills* may be an extension of an older line of cases beginning with *Lockett.*

In a relatively compressed period of time, the Supreme Court handed down four cases the central issue of which, be it on direct review or collateral review, required elaboration upon the jurisprudence of *Lockett* and *Eddings.* They therefore merit close consideration here. *Mills* began the train of cases with its explicit analysis of *Lockett* and its progeny and the *Mills* approach was affirmed in *McKoy.*

In *Penry,* the petitioner challenged the Texas death scheme for its limitation on the sentencer's consideration of the mitigating circumstances of petitioner's mental retardation and abused background. Penry did not challenge the Texas statute facially, previously upheld in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), but instead asserted that, as applied, the jury's affirmative response to three "special circumstances" which are designed to incorporate factors of mitigation, prevented them from giving full effect to mitigating circumstances.[6] In effect, the special issues, or interrogatories, submitted to the jury in *Penry* were not drafted or defined in a way that would permit the jury to consider and give effect to Penry's mitigating evidence in answering those questions.

The Court held that *Lockett* and *Eddings* controlled the consideration of Penry's claim and that those decisions were bottomed on notions of individualized sentencing in capital cases. The Court concluded:

> The rule Penry seeks—that when such mitigating evidence is presented, Texas juries must, upon request, be given jury

**5.** Recently, a majority of the Court arrived at yet another formulation of when a rule is new. Relying on *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) for the rationale that objectively reasonable steps taken by law enforcement actors are not meant to be deterred by the Fourth Amendment, the Court found that "[t]he 'new rule' principle [ ] validates reasonable, good-faith interpretations of existing

> precedents make by state courts even though they are later shown to be contrary to later decisions." *Butler,* 494 U.S., at 414, 110 S.Ct., at 1217.

**6.** Petitioner also contended that it was cruel and unusual punishment to execute a mentally retarded individual. This claim was rejected.

instructions that make it possible for them to give effect to that mitigating evidence in determining whether the death penalty should be imposed—is not a new rule under *Teague* because it is dictated by *Lockett* and *Eddings*. Moreover, in light of the assurances upon which *Jurek* was based, we conclude that the relief Penry seeks does not impose a new obligation on the State of Texas.

*Penry,* 492 U.S., at 318–19, 109 S.Ct., at 2947 (citation and punctuation omitted).[7] The critical point for our purposes is that rules which are extensions of existing rules are not new. Penry's access to the jury for purposes of having it consider his mitigating circumstances was guaranteed by the Eighth and Fourteenth Amendments requirement of individualized consideration of such factors. *Lockett* and *Eddings* had announced this much earlier.

Finally, in *Saffle v. Parks, supra,* the Court analyzed petitioner's claim that the trial court's instruction to the jury to "disregard sympathy" during sentencing impermissibly limited their consideration of mitigating circumstance under the *Lockett* line of cases. Justice Kennedy, for the majority, held that petitioner was in fact advocating a new rule—that juries should consider their sympathetic feelings on sentencing—and barred the retroactive application of it. The Court found critical the distinction between the jury's access to mitigating information, i.e. what it *could* consider, and the state's right to guide the jury's consideration of mitigating factors, i.e. *how it should* consider them.

There is a simple and logical difference between rules that govern what factors the jury must be permitted to consider in making its sentencing decision, and rules that govern how the state may guide the jury in considering and weighing those factors in reaching a decision.

\* \* \* \* \* \*

Here, by contrast, there is no contention that the State altogether prevented Parks' jury from considering weighing, and giving effect to all of the mitigating evidence that Parks put before them; rather, Parks' con-

tention is that the State has unconstitutional limited the manner in which his mitigating evidence is considered. As we have concluded above, the former contention would have come under the rule of *Lockett* and *Eddings;* the latter does not.

*Parks,* 494 U.S., at 490–91, 110 S.Ct., at 1261–62. *Lockett* dealt with access to mitigating circumstances and the effect required to be given to them, reasoned Justice Kennedy. Since nothing in that case or those that followed prohibited a state from attempting to ensure reliability and the absence of arbitrariness by requiring that the jury consider and give effect to the defendant's mitigating evidence in the form of a reasoned moral response rather than an emotional response, petitioner's rule was therefore new.

2. Application to Petitioner's Claim

By like analysis this Court, applying *Parks,* sees in the *Mills–McKoy* rule a clearcut application of *Lockett*'s demand that juries consider all mitigating circumstances. *Mills* is therefore not a new rule under *Teague* and petitioner's unanimity claim, as a threshold matter, applies retroactively.

The relative difficulty of such analysis was noted by Justice Harlan in his opinion in *Mackey v. United States,* 401 U.S. 667, 695, 91 S.Ct. 1160, 1181, 28 L.Ed.2d 404 (1971) which became the basis for much of the reasoning behind the recent retroactivity rulings:

[There are] inevitable difficulties that [ ] arise in attempting to determine whether a particular decision has really announced a new rule at all or whether it has simply applied a well-established constitutional principle to govern a case which is closely analogous to those which have been previously considered in the prior case law.

(Citations and punctuation omitted).

The conclusion that *Mills* does not constitute a new rule under *Lockett* is bolstered by the opinion of the Eighth Circuit in *Smith v. Armontrout,* 888 F.2d 530 (8th Cir.1989), *reh'g denied,* (Jan. 2, 1990) in which the court, although not reaching the issue of

7. The Court notes the twin rulings by the Supreme Court that Penry's claim was both "dictat-

ed" by *Lockett* and *Eddings* and did not prejudice Texas by imposing further "obligations."

retroactivity because of a procedural bar, suggested that *Mills* was a "standard application" of the rule in *Lockett* and hence would not be new. 888 F.2d, at 545. (Emphasis added). Because the Court finds that we are not dealing with a new rule, no further analysis of retroactivity need be undertaken.

## C. *The Defense of Procedural Default*

▇ Petitioner's counsel failed to raise the unanimity issue at trial or on direct appeal to the Arkansas Supreme Court. In his petition for relief under Rule 37 however, and in the petition for rehearing of the denial of relief, petitioner most decidedly raised the issue as a *Lockett* claim. *See* Exhibit A to Petitioner's Reply Brief, p. 41–46. Under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) the claim is procedurally barred unless both "cause and prejudice" are shown.

▇ Cause for failure to comply with state procedural rules may be found "[w]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel." *Reed v. Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984). "Unavailability," the Supreme Court has indicated, might be shown by "the absence of any factually or legally analogous precedents" such that there was no reason to believe the claim would "find favor in the federal courts" at the time. *Engle v. Isaac*, 456 U.S. 107, 130, 102 S.Ct. 1558, 1573, 71 L.Ed.2d 783 (1982). *See also Dugger v. Adams*, 489 U.S. 401, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989).

In this Circuit, the novelty does not apply to excuse cause if "tools were available" before the default to make the claim. *Leggins v. Lockhart*, 822 F.2d 764, 766 (1987). In *Leggins* the Eighth Circuit advocated an objective, or "common sense view of what reasonably diligent counsel would have been aware of." *Id.*

Petitioner was sentenced to death in 1975, three years after the Supreme Court invalidated every state's capital statutes in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) and three years before the decision in *Lockett.* Between 1972 and

1976, when the Supreme Court reviewed the death statutes in five states, reinstating three sentencing schemes, no capital case was considered or decided. The issue before the Court then is whether, in 1975, the unanimity claim was novel or whether the tools existed then, before *Lockett,* to make the argument now offered.

The Court has found that petitioner's *Mills* claim is directly derived from *Lockett.* As noted by petitioner in his exhaustively researched reply brief, two cases have had occasion to deal with the problems of pre-*Lockett* claims based on the rationale of *Lockett.* In *Smith v. Armontrout, supra,* the Eighth Circuit held, without reaching the merits of a *Mills* argument, that since Smith was tried in 1981, the legal tools existed to make the claim or, as the panel put it, the principle "ha[d] been a familiar feature of the legal landscape *since* 1978, when *Lockett* was decided." *Smith,* at 545 (reporters omitted).

The Eleventh Circuit, sitting *en banc* faced a similar claim to petitioner's in *Hargrave v. Dugger,* 832 F.2d 1528 (11th Cir.1987). There, petitioner was sentenced in 1975 and asserted the novelty of the *Lockett* claim to justify his failure to comply with state procedures. The Court found first that the *Lockett* decision represented a "clear break with the past" in 1978. Citing *Reed, supra,* at 17, 104 S.Ct. at 2911. The Court next canvassed all federal and state cases for evidence of similar challenges or precedents and found none. Its conclusion that, "this Court recogniz[es] the practical unavailability of a *Lockett* claim," is a direct and persuasive argument for so finding in this case.

Accordingly, this Court, applying a "common sense view of what reasonably diligent counsel would have been aware of," finds that the *Lockett* claim was novel before 1978. The cause prong is thus satisfied.

No real argument can be made to contradict petitioner's assertion of prejudice which would result from applying the procedural bar on this issue since the recent retroactivity jurisprudence will not bar the relief. *Sykes* is satisfied, and the Court concludes

that Mr. Hulsey's unanimity claim under *Mills* is not procedurally barred.[8]

■ Petitioner's *Mills* claim, surviving as it does the gauntlet of *Teague*'s new rule analysis and *Sykes*' new law requirement for novelty, is likely to be a rarity. While in petitioner's case the timing of his pre-*Lockett* trial and appeal, and the compelling precedent holding that *Mills* merely extended *Lockett* rather than establishing a new rule "saved" the unanimity claim, the intersection of these two doctrines will likely snare most petitioners. Considered generally, a novel claim will, in most instances arise from a new rule which may not be applied retroactively, and new rules will usually not be novel at the time of petitioner's state collateral proceedings and therefore, will not present cause for the procedural default.

### D. *Abuse of the Writ*

■ Respondent claims that petitioner is guilty of abusing the Great Writ. This claim is based on the argument that in the prior petition the unanimity argument and *Lockett* were not mentioned while appearing prominently in this petition. This claim is meritless. On pages 33–38 of petitioner's original petition to this Court the *Lockett*-based unanimity claim was made and defended. The only differences between the claims there and here is the prominent appearance of the *Mills* case in the current argument and table of contents. This is not an instance of a claim raised for the first time in a previous petition. In any case this third amended petition is not a successive petition as that designation is understood under Eighth Circuit caselaw. *See e.g. Smith v. Armontrout, supra.*

### E. *The Merits of Petitioner's Unanimity Claim*

Here the jury was given three forms to complete: Form A relating to findings of aggravating circumstances, Form B, to mitigating circumstances, and Form C to the

balancing of mitigating against aggravating. The text of Form B reads:

> The Jury will make each of the following findings by having the Foreman place a check mark ( ) in the appropriate space in the sentence in accordance with the Jury's response. *These findings must be unanimously made.*

(Emphasis added). Although the trial judge's instructions made no reference to the unanimity requirement, emphasis was placed on the need to affirmatively find mitigating circumstances:

> If you find that one or more of these mitigating circumstances existed at the time of the commission of the capital felony, you shall likewise indicate your finding by checking the appropriate circumstance or circumstances on Form B.

The jury professed doubt as to the procedure to follow when making the findings. In a question from the foreman we find:

> [W]e have observed that in each one of these circumstances there is a positive or negative answer. A choice, in other words. Do we understand correctly that we must make a choice either positive or negative on each one to these questions?

Trial Transcript at 148–49. **The Court's response, although confusing, clearly seeks to impress upon the jurors the need for affirmative and unanimous findings:**

> Mr. Anderson, if you find that those facts exist, or do not exist, then indicate your finding on it, even in cases where they have asked you questions that are contained in the death penalty itself, and are not even applicable to this case, you find whether it did or did not.
>
> \* \* \* \* \* \*
>
> Go through that and you will find that we are following a form that has heretofore (sic) been prepared by, well, we have tried to think, wiser heads than we are, but they have included all those things in there, so you make a finding on each one of those

8. In passing, it should be noted that the respondent's assertion that the unanimity issue in *Mills* was ultimately decided as a matter of "logical analysis of how a jury would have viewed the instructions presented to them and

the difficulty posed to the defendant if the jury had to find mitigating circumstances unanimously" is simply contrary to the *Mills* analysis of *Lockett* and *Eddings*.

things. *If they did not exist, just say do not. If they do exist, and you are unanimous on it check it that way.*

*Id.* (Emphasis Supplied) The jury was also required to make a unanimous finding of no mitigating circumstances.

■ While the State of Arkansas has argued the nonretroactivity of the rule in *Mills* as well as the applicability of the procedural default bar it has not argued the inapplicability of *Mills* to the merits of petitioners claim:

> There are strong similarities between the instant case and the verdict forms/instructions utilized in the *Mills* case. There are also distinctions that can be drawn. However, the respondent finds it difficult to draw any meaningful distinctions between the case at bar and the *Mills* case in terms of the constitutional issue presented. Therefore, the respondent stands on the foregoing procedural arguments and will not address the merits of the petitioner's claim at this time.

Response to Third Amended Petition for Writ of Habeas Corpus, at 11–12.

Indeed, the similarities between *Mills* and *McKoy* on the one hand, and petitioner's case on the other are notable and striking. Here too, the jurors were given jury forms requiring a single "x" to signify unanimity. Here too, they were forced to indicate by a similar mark their inability to reach a **unanimous conclusion** as to the existence of mitigating circumstances. And here, unlike in the decided cases, they explicitly expressed their confusion as to how to give effect to the circumstances they were charged to consider in a question to the court. The answer, emphasizing as it did the unanimity requirement, reinforced the unconstitutional defect in violation of *Mills* and *McKoy*. There was *more* than a mere possibility that the jury was precluded from giving due consideration to all mitigating factors, they were prevented from doing so by the law of Arkansas and their instructions. Since the *Mills* claim is not precluded from retroactive effect or otherwise procedurally barred, "it would certainly be the height of arbitrariness to allow or require the imposition of the death penalty." *Mills*, 486 U.S., at 374, 108 S.Ct., at 1865.

The Court will order resentencing on the basis of this constitutional defect.

## III. PRESUMPTION OF DEATH AND IMPERMISSIBLE BURDEN SHIFTING

Petitioner's next claim challenges the Arkansas death statute under which petitioner was sentenced. Petitioner alleges that a presumption of death is imbedded in the language of the statute because it requires a jury to find that mitigating circumstances affirmatively outweigh aggravating circumstances. A derivative but distinct claim is that this weighing shifts the burden of persuasion to the defendant to prevent the death sentence. These twin challenges raise issues which are, as yet, not well developed in the field of capital habeas cases.

### A. *Retroactivity*

■ The success of respondent's defense of procedural bar depends in part upon this Court's willingness to apply a new rule retroactively. In *Harris v. Reed,* 489 U.S. 255, 260, 109 S.Ct. 1038, 1042, 103 L.Ed.2d 308 (1989), the Supreme Court adopted the "plain statement" rule of *Michigan v. Long,* 463 U.S. 1032, 1034, 103 S.Ct. 3469, 3473, 77 L.Ed.2d 1201 (1983) to habeas cases. Prior to *Harris,* state courts were obligated to give an unambiguous signal of their reliance on state procedural bars as grounds for their decisions only in cases on direct appeal. Now, in habeas cases:

> if it fairly appears that the state court rested its decision primarily on federal law [the district court] may reach the federal question on review unless the state court's opinion contains a plain statement that [its] decision rests upon adequate and independent state grounds.

*Harris v. Reed, supra,* 489 U.S., at 261, 109 S.Ct., at 1042–43.

Decided in 1989, *Harris* is certainly a new rule handed down after petitioner's conviction became final in 1978 and it would be barred from retroactive application under *Teague.* However, nonretroactivity appears to be called for by the second of two stated exceptions outlined by the Court in *Teague,* in which a rule relating to factfinding reliabil-

ity and fairness is implicated. In *Harris* the Court explained:

> [r]equiring a state court to be explicit in its reliance on a procedural default does not interfere unduly with state judicial decisionmaking. As *Long* recognized, it would be more intrusive for a federal court to second guess a state court's determination of state law.

*Id.*, 489 U.S., at 264, 109 S.Ct., at 1044. With the obvious interest in finality expressed by the extension of *Long* to habeas cases, retroactive application of *Harris* seems appropriate.

Thus far the Eighth Circuit and district courts within the Circuit have approved the retroactive application of *Harris* without fanfare, as will this Court. *See e.g. Williams v. Lockhart,* 873 F.2d 1129 (8th Cir.1989); *Edgar v. Trickey,* 708 F.Supp. 1090 (W.D.Mo. 1989); *Richardson v. Miller,* 716 F.Supp. 1246 (W.D.Mo.1989).[9]

## B. *The Defense of Procedural Default*

■ Petitioner's counsel failed to raise this issue at trial but raised it on direct appeal to the Arkansas Supreme Court. The issues now are (1) whether the treatment of this claim by the Arkansas Supreme Court amounted to a holding on adequate and independent state procedural grounds as an alternative holding to any ruling on the merits; and (2) whether such a holdings was plainly and unambiguously stated as required under *Harris*.

On direct appeal the Arkansas Supreme Court ruled that counsel's failure to raise the issue at trial resulted in the default of the claim. Immediately after so finding, however, the court took up the merits:

> Appellant contends the trial court placed an unconstitutional burden upon him when it instructed the jury it might consider five or more mitigating circumstances.
>
>     *    *    *    *    *    *
>
> At trial counsel stated: "Your Honor, they [the instructions] are good for the defendant." *Appellant by failing to object to the instructions cannot now raise the issue on appeal even though this is a capital case.*

*Hulsey, supra,* 261 Ark. 449, 549 S.W.2d 73, 78 (1977) (citations omitted, emphasis added). The court then cited Rule 13 of the Uniform Rules For Circuit and Chancery Court which bars review of unobjected to claims on review. Had the court stopped there, its holding would have been unambiguously grounded in state procedural rules. The court pushed on, however, to a discussion of the underlying claim:

> Furthermore, the instructions reflect that the court did not place any burden on appellant to prove mitigating circumstances.
>
>   *    *    *    *    *    *
>
> Appellant relies on *Mullaney v. Wilbur* [421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) ] (cite omitted) but the issue in Mullaney was whether the State could be relieved of proving any element of a crime beyond a reasonable doubt. The Court held that the prosecution must prove every element of the crime and the burden did not shift to the defendant to prove he was acting with "heat or passion" in order to reduce his charge from murder to manslaughter.
>
>     *    *    *    *    *    *
>
> In the case at bar the issue of guilt of the crime charged had already been resolved against appellant before mitigating circumstances were considered by the jury. Proof of all essential elements of the crime was required and the jury found appellant guilty. *Thus the holding of Mullaney is not applicable under these facts.*

*Id.* (emphasis added, punctuation omitted).

Petitioner alleges that the ambivalence of the Arkansas Supreme Court's treatment of this claim on direct appeal was continued in its review of the Rule 37 petition and the subsequent petition for rehearing. On Rule 37 review the court found several issues waived but stated: "[a]lthough they are argued as constitutional questions they do not raise issues so fundamental as to render the sentence and the judgment void and open to

---

9. In addition, as noted by petitioner, respondent's objection to the retroactivity of *Harris* is inconsistent with its reliance on the retroactive use of *Teague* itself and *Wainwright v. Sykes.*

collateral attack." 595 S.W.2d, at 936. Again, in the petition for rehearing the court stated "[n]o violation of any fundamental constitutional right has been discovered ... We are now asked to declare that trial counsel should have anticipated the frail and insubstantial constitutional questions that are now being urged." 599 S.W.2d 729, 730 (1980).

This Court has considered these statements in the first petition for federal habeas corpus relief. 550 F.Supp. 179, 183 (1981). In the context of the *Grigsby* issues then before the Court, petitioner quoted the above language to prove that the Supreme Court had determined issues on their merits. This Court held:

> in the Court's opinion, such a finding would place far too much emphasis on a general assertion by the Court. The statement that no constitutional violation has been discovered was made in the context of a discussion concerning the adequacy of representation by Mr. Hulsey's counsel.

> \* \* \* \* \* \*

> The Arkansas Supreme Court did not address the merits of the *Grigsby* issues in its opinion denying rehearing of the Rule 37 petition.

*Id.* at 183.

This finding constitutes the law of this case. However, we need not get entangled in this thicket because the retroactive requirement of a *Harris* "plain statement" has not been unambiguously met on direct appeal. The issue is thus not decided on independent state grounds and is not procedurally barred from federal review under *Wainwright v. Sykes.*

C. *The Merits of the Claim: The Death Presumption*

Verdict Forms A and B, discussed earlier, instructed the jury to make findings as to aggravating and mitigating circumstances. Form C allocated the burdens of proof and directed the sentencers to decide both whether "the mitigating circumstances *outweighed* the aggravating circumstances" and whether the aggravating circumstances sufficiently justified the death sentence. This formula reflected the primacy of aggravating circum-

stances established in the then applicable Arkansas capital sentencing scheme at Ark. Stat.Ann. § 41–4710(e)(ii) (Supp.1973) which requires, if death is to be imposed, that the jury find:

> (i) that there are (or are not) sufficient mitigating circumstances to outweigh the aggravating circumstances.

The burden of establishing that mitigating circumstances outweigh aggravating circumstances was not allocated.

Petitioner suggests two disturbing possibilities which, if true, establish due process violations. If a jury found the mitigating and aggravating circumstances in equipoise, neither one more probative than the other, or, could not fairly come to a conclusion about what balance existed between them, they would be *obliged* to impose the death sentence since the mitigating circumstances would not be found to outweigh the aggravating. The requirement that the aggravating circumstances justify the sentence of death, which could easily be (and was probably intended to be) construed as an independent inquiry (satisfied by a single finding of an aggravating circumstance) would not cure the presumption created by the equation.

■ Petitioner argues that the sentencing equation imposes presumptions which are impermissible in criminal cases generally and violate principles of individualized sentencing required in capital cases specifically. Petitioner also alleges that the equation, on its face, and as applied, may easily result in a mandatory death sentence, outlawed in the 1976 set of Supreme Court decisions. *See Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). *See infra.*

The State answers by reference to the Arkansas Supreme Court's ruling on direct appeal. There, addressing the contention that the equation burdens the petitioner by obliging him to carry the ultimate burden of persuasion, the court flatly stated:

> In the case at bar the issue of guilt of the crime charged had already been resolved against appellant before mitigating circumstances were considered by the jury. Proof of all the essential elements of the crime was required and the jury found

appellant guilty. Thus, the holding of *Mullaney* [*v. Wilbur, supra*] is not applicable under these facts.

549 S.W.2d 73, 79.

### 1. A Continuum Within the Caselaw

The Supreme Court in *McKoy, supra,* affirmed the logic and holding of *Mills,* striking the unanimity provision in North Carolina's capital sentencing statute. Although an almost identical provision of that statute presented an equation which also asked the jury if mitigating circumstances outweighed aggravating circumstances, the death presumption issue was not raised by *McKoy* and was not taken up by the Court. Three circuit courts have, however, reached the merits of this precise claim.

In this Circuit, Judge Arnold, writing for a unanimous panel considering this claim, ruled against relief on three grounds in *Smith v. Armontrout, supra.* The statute in Missouri, like that here, required that mitigating circumstances outweigh aggravating circumstances. The court found that petitioner cited no law in support of his claim, could point to no requirement in the instructions that death *must* be imposed in the absence of findings compelling a life sentence, and emphasized, finally, the existence of a specific "saving" instruction which permitted the jury to impose life even if the mitigating circumstances did not outweigh the aggravating circumstances.

Petitioner distinguishes this case largely on the basis of the failure of the Arkansas statute to provide a "saving" instruction. That is, in this Court's view, the correct and critical distinction. This instruction, as paraphrased by the panel, permitted imposition of a sentence of life imprisonment with conditions of parole "whatever [the jury thought] about the existence or weight of aggravating circumstances." *Id.* at 545.

The Eleventh Circuit entertained and granted relief on a claim that the trial court's reference to a presumption of death was constitutional error. In *Jackson v. Dugger,* 837 F.2d 1469 (11th Cir.), *reh'g denied,* 842 F.2d 339 (11th Cir.), *cert. denied,* 486 U.S. 1026, 108 S.Ct. 2005, 100 L.Ed.2d 236 (1988), the court distinguished its prior approval of

Florida's Supreme Court's holding that a "presumption that a death sentence should be affirmed due to the existence of five aggravating circumstances and no mitigating circumstances seems very like the application of a harmless error rule" *id.* at 1473, with the case before it in which the *jury* was instructed as to the presumption. The trial judge guided their deliberations as follows:

> When one or more of the aggravating circumstances is found, *death is presumed to be the proper sentence* unless it or they are overridden by one or more of the mitigating circumstances provided.

*Id* (emphasis supplied).

The *Jackson* court held that this presumption "if employed at the level of the sentencer, vitiates the individualized sentencing determination required by the Eighth Amendment." *Id.* The court focussed its reasoning on two lines of capital sentencing jurisprudence: first, the requirement of individualized sentencing and second, the need for the jury to consider and give effect to all evidence in mitigation as well as to be permitted to exercise mercy at their discretion. Regarding the former, the court identified what it termed the "risk" that the presumption instruction "may well have skewed the jury towards death." *Id.* at 1474. As to the latter, the court cited *Lockett, Eddings* and found the instruction wanting.

> Rather than follow Florida's scheme of balancing aggravating and mitigating circumstances as described in *Proffitt,* [*v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976)], the trial judge instructed the jury in such a manner *as virtually to assure a sentence of death.* A mandatory death sentence is constitutionally impermissible.

*Id.* (emphasis added). No saving instruction could cure this presumption and the court remanded for resentencing.

Finding that *Jackson* stood for the proposition that presumptions of death are unconstitutional, the Ninth Circuit sitting *en banc* in *Adamson v. Ricketts,* 865 F.2d 1011 (9th Cir.1988), *cert. denied sub nom. Lewis v. Adamson,* 497 U.S. 1031, 110 S.Ct. 3287, 111 L.Ed.2d 795 (1990), examined the Arizona

weighing provision and concluded that it too created an impermissible presumption of death. The statute reads in relevant part:

the court ... shall impose a sentence of death if the court finds one or more of the aggravating circumstances ... and that there are no mitigating circumstances *sufficiently substantial to call for leniency.*

Ariz.Rev.Stat.Ann. § 13–703E (emphasis added).

Underscoring that its finding of a presumption was *not* based on the presence of the word "shall" in the statute, as suggested by the dissent, the court explained: "rather [it is based on] the fact that under the Arizona statute, the death sentence will be imposed *unless* mitigating circumstances *outweigh* the aggravating circumstances." *Id.* at 1042, n. 50. The court's reasoning mirrored the reasoning of the *Jackson* court with its twin emphases on the requirement of individualized sentencing and the need to allow the sentencer's discretion to be unbridled.

The court in *Adamson* collapsed the issues raised in this case by petitioner, presumption of death *and* burden shifting, into one constitutional inquiry. There, as here in Mr. Hulsey's case, the state argued that the assignment to petitioner of the burden of production on mitigating evidence did not offend due process "once the defendant has been found guilty beyond a reasonable doubt." *Id.* at 1043. Rejecting this formulation of the question, the court provided its own:

this reasoning falls short of the real issue—that is, whether the presumption in favor of death that arises from requiring that the defendant prove that mitigating circumstances outweigh aggravating circumstances, offends federal due process by effectively mandating death.

*Id.*

Comparing the previous three cases against our own statute we may note a continuum of constitutional error found by the circuit courts. In *Smith,* where no presumption was found, a saving instruction distinguished the Missouri scheme from the Arkansas scheme. In *Jackson* the trial court specifically mentioned a presumption of death, and the panel so found—a straightforward application of Eighth Amendment jurisprudence. In *Adamson* however, we find a statute whose interpretation by the Ninth Circuit is a creative act of construction and a presumption is found. The present case sits between *Adamson* and *Jackson.*

Here, it is explicit in the statute that mitigating must outweigh aggravating circumstances and no saving instruction is found. Here too, the strictures of the Eighth and Fourteenth Amendments with their requirements of individualized sentencing and full consideration of evidence in mitigation appear to require relief. Following the logic of the Ninth Circuit, the death presumption and burden shifting claims may be collapsed into one inquiry: whether the weighing equation as drawn "offends federal due process by effectively mandating death." The Court concludes that under the Arkansas statute under which petitioner was sentenced, it does.[10] Petitioner is entitled to habeas corpus relief on this ground also.

## IV. PETITIONER'S OTHER CLAIMS

Petitioner's third claim pertains to the closing argument of the prosecutor at sentencing. Petitioner alleges that the jury weighed and relied upon inflammatory comments and that by so doing based the death sentence on a nonstatutory aggravating circumstance, specifically, the brutality of the crime. The Court views this as a serious issue but chooses not to deal with it here. Likewise the Court will not address Petitioner's fourth contention, an ineffective assistance of counsel claim since his arguments also relate only to the sentencing phase of his trial.

## V. CONCLUSION

The Court will order a new sentencing trial to be commenced within 120 days of this order, or the Writ of Habeas Corpus shall

---

10. The current Arkansas statute reverses the equation and allocates the burden of persuasion: "aggravating circumstances outweigh beyond a reasonable doubt mitigating circumstances found to exist." A.C.A. § 5–4–603.

issue mandating a sentence of life without parole.

IT IS THEREFORE ORDERED that the Third Amended Petition for Writ of Habeas Corpus be, and it is hereby, GRANTED. The State is given 120 days within which to commence a new sentencing trial; otherwise the Writ shall issue mandating a sentence of life without parole.[11]

---

11. The Court wishes to acknowledge the exceptionally high quality and the thoroughness of

petitioner's counsels' work in this case.