No. 81,438

STATE OF KANSAS, *Appellee,* v. DAVID M. SPAIN, *Appellant.*

(4 P.3d 621)

Opinion filed April 21, 2000.

*Rebecca E. Woodman,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with her on the briefs for appellant.

*John K. Bork,* assistant attorney general, argued the cause, and *Carla J. Stovall,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: In *State v. Spain,* 263 Kan. 708, 953 P.2d 1004 (1998), this court vacated David Spain's sentence and remanded for resentencing. On remand, the district court reimposed a hard 40 sentence. Spain appeals his sentence.

This is the second time Spain has appealed his sentence to this court. In the first appeal, we stated:

"These essential facts are not in dispute: On March 17, 1995, David Spain and two other inmates escaped from the Haskell County Jail after Spain shot the dispatcher, Irvin Powell. Spain fired one shot from behind, which struck Powell in the neck. After being told by one of the other escapees to "[p]lug him again," Spain fired a second shot into Powell's chest. Powell died 3 days later from the bullet wounds inflicted by Spain. Spain entered a plea of no contest to one count of premeditated first-degree murder. He was sentenced to serve a mandatory term of imprisonment of 40 years." 263 Kan. at 709.

When sentencing Spain the first time, the trial court found one mitigating circumstance—that Spain was dominated by his codefendant. The codefendant was Douglas Winter, who conceived the

escape plan and got other inmates involved. It was Winter who urged Spain to fire the second shot. The trial court found two aggravating circumstances for Spain—that he committed the murder in order to avoid prosecution and that he knowingly created a great risk of death to more than one person.

The evidence on which the trial court based its finding that Spain created a great risk of death to someone other than the murder victim was that several hours after shooting the dispatcher and escaping from the jail, he threatened a Colorado man who offered to help Spain with a flat tire. This court concluded that these facts did not constitute an aggravating circumstance within the meaning of the statute: "Under K.S.A. 21-4636(b), a direct relationship must exist between the great risk of death to another and the charged murder. Such a risk need not be contemporaneous with the homicide, but it must occur in the course of a defendant's conduct in committing the charged murder." 263 Kan. 708, Syl. ¶ 5.

Upon remand, the trial court weighed the one aggravating and the one mitigating circumstance. At the resentencing hearing, the trial court stated:

"I'm unable to make a determination that either factor outweighs the other factor. I find them to be of equal weight. . . .

"I have no option under the statute because of that finding to do anything but require that the hard 40 be imposed, and it will, therefore, be the order of the Court that that will be the sentence imposed."

In this appeal, Spain questions the constitutionality of the provision of K.S.A. 1999 Supp. 21-4635(c) that requires imposition of a hard 40 sentence if aggravating and mitigating factors are of equal weight. It states, in part:

"If the court finds that one or more of the aggravating circumstances enumerated in K.S.A. 21-4636 and amendments thereto exist and, further, that the existence of such aggravating circumstances is not outweighed by any mitigating circumstances which are found to exist, the defendant shall be sentenced pursuant to K.S.A. 21-4638 and amendments thereto; otherwise, the defendant shall be sentenced as provided by law."

Spain contends that imposing a hard 40 sentence where the explanations for the criminal conduct are as significant as the culpable

aspects of it amounts to cruel and unusual punishment. We disagree.

Spain concedes on appeal that in the trial court, he based the constitutional challenge solely on the state constitutional provision that prohibits the infliction of cruel or unusual punishment. Kan. Const. Bill of Rights, § 9. On appeal, he also invokes the prohibition of cruel and unusual punishment in the Eighth Amendment to the federal Constitution. He cites *State v. Puckett*, 230 Kan. 596, 598-99, 640 P.2d 1198 (1982), for the proposition that issues not raised in the trial court may be considered by the appellate court in certain circumstances. In the present case, Spain has expanded the scope of the authority for his challenge to 21-4635(c), but his argument that application of the statutory provision may result in the infliction of cruel and unusual punishment remains the same.

Spain relies entirely on death penalty cases to support his challenge to the hard 40 statute. In the first appeal of his sentence, he tried to convince this court to rule that both hard 40 and capital sentences were to be governed by the same authority. The court stated:

"A body of case law has been developed for the hard 40, and those cases are governing precedents for the present case. Spain was not sentenced under K.S.A. 21-4624; thus, we need not go beyond established case law in order to adjudicate the case before the court. We will not anticipate whether the governing principles should be modified in a death penalty case. Such an opinion would be beyond determining the issue before us." 263 Kan. at 710.

In the present appeal, no cases interpreting the Kansas hard 40 statute have been cited by defendant. In the absence of controlling precedent, Spain directs the court's attention to death penalty cases from federal courts and other states' courts. The cases relied on by Spain are *Hulsey v. Sargent*, 868 F. Supp. 1090 (E.D. Ark. 1993); *People v. Young*, 814 P.2d 834 (Colo. 1991); and *State v. Biegenwald*, 106 N.J. 13, 524 A.2d 130 (1987). None of the cited cases is controlling in the present case.

In *Young*, the Colorado Supreme Court invalidated that state's death penalty statute, which required imposition of the death penalty when a jury decides that aggravating and mitigating factors are equally balanced. The Colorado court reasoned that the statute

"does not reflect the degree of certainty and reliability that the Colorado Constitution requires to support the imposition of the uniquely severe and irrevocable sentence of death," thus violating the Colorado constitutional proscription of cruel and unusual punishments. 814 P.2d at 839. The Colorado court noted that the requirement that a death sentence be both certain and reliable is "based on the recognition that there is a qualitative difference between the penalty of death and all other penalties." 814 P.2d at 843.

In *Biegenwald*, the New Jersey Supreme Court took up the question of equally balanced aggravating and mitigating factors even though defendant had not raised it at trial or on appeal. The relevant portion of the New Jersey statute is quoted in the opinion as follows: "If the jury or the court finds that any aggravating factor exists and is not outweighed by one or more mitigating factors, the court shall sentence the defendant to death." 106 N.J. at 58 (quoting N.J. Stat. Ann. § 2C:11-3[c][3][a] [West 1982]). In invalidating this provision, the New Jersey court stated: "If anywhere in the criminal law a defendant is entitled to the benefit of the doubt, it is here. We therefore hold that as a matter of fundamental fairness the jury must find that aggravating factors *outweigh* mitigating factors, and this balance must be found beyond a reasonable doubt." 106 N.J. at 62.

In *Hulsey*, the federal district court held that the Arkansas death penalty statute unconstitutionally mandated death if aggravating and mitigating factors were equally balanced. Its decision was made according to "the strictures of the Eighth and Fourteenth Amendments with their requirements of individualized sentencing and full consideration of evidence in mitigation." 868 F. Supp. at 1103.

Spain urges this court to conclude that to avoid the constitutional infirmities that felled the death penalty statutes in *Young, Biegenwald*, and *Hulsey*, the sentencer must be afforded some discretion in a Kansas hard 40 case. He illustrates the need for discretion by calling to the court's attention that the district court imposed a lesser sentence on Winter than it imposed on Spain, despite the sentencing judge's conviction that Winter was the leader. At the time of resentencing, the district court stated:

"I am concerned about the fact that Mr. Winter received 25 as the controlling time before he was eligible for consideration by the parole board, whereas Mr. Spain has the potential of it being 40 before he was eligible for consideration. I looked through the statute and it does not say to me that I have the right to make a determination that because Mr. Spain cut a different deal than Mr. Winter did, and that Mr. Winter's was a better deal, that I can deviate from the statute.

"I don't take [the prosecutor's] argument that there is a difference between the two, and the argument that there is an additional aggravating circumstance, but it is a valid argument that there were reasons why one defendant was able to cut a better deal with the State than another defendant. Because even though they were involved in the same crime, they had different roles in that crime, and it's not my prerogative to go and look behind that issue.

. . . .

". . . I'm unable to make a determination that either factor outweighs the other factor. I find them to be of equal weight. . . .

"I have no option under the statute because of that finding to do anything but require that the hard 40 be imposed, and it will, therefore, be the order of the Court that that will be the sentence imposed."

In *State v. Bailey*, 251 Kan. 527, 834 P.2d 1353 (1992), the issue was disparity in the sentences of cofelons. Bailey contended that he was less culpable than Jeffries, his codefendant, but his sentence required him to serve 15 years more. A gas station attendant was killed in an armed robbery committed by Bailey and Jeffries. Each blamed the other. There were no witnesses. Thus, "a question remains concerning which of the two pulled the trigger." 251 Kan. at 528. The court expressed the opinion, however, that past conduct and Jeffries' possession of the murder weapon strongly suggested that he was the killer. Jeffries and Bailey were sentenced by different judges. The judge who sentenced Bailey expressed the view that the codefendant's sentence was not relevant. This court disagreed and noted that the legislature's adoption of sentencing guidelines signaled its intent that similarly situated defendants should receive similar sentences. The court vacated Bailey's sentence and formulated the following syllabus paragraph: "A trial judge's discretion in imposing a sentence is not boundless and is to be exercised with regard to what is right and equitable under the circumstances." 251 Kan. 527, Syl. ¶ 3.

Thus, when the court previously has faced the question of disparate sentencing, the issue raised has been an abuse of discretion.

In the present case, the contention is that the lack of discretion renders the statutory scheme unconstitutional.

Although Spain emphasizes the disparity of his and his cofelon's sentences, and the sentencing judge seemed to be concerned about it, disparate sentences can be justified by the different acts committed by Spain and Winter. There is no question that it was Spain who shot and killed the dispatcher. Winter aided Spain and urged him to fire the second shot, but Winter did not shoot the victim.

The State argues that in *Walton v. Arizona*, 497 U.S. 639, 111 L. Ed. 2d 511, 110 S. Ct. 3047 (1990), a majority of the United States Supreme Court expressly rejected the argument that a statute is unconstitutional if it requires that the hard 40 sentence be imposed when aggravating and mitigating factors are equally balanced. In *Walton*, five justices agreed the Arizona death penalty statute did not create an unconstitutional presumption in favor of the death penalty. The statute at issue in *Walton* required imposition of the sentence of death if any aggravating circumstances were established and there were " 'no mitigating circumstances sufficiently substantial' " to warrant leniency. 497 U.S. at 644 (quoting Ariz. Rev. Stat. Ann. § 13-703[E] [1989]). Although the language chosen by the Arizona Legislature does not include the terms "weigh" or "outweigh," what the statute prescribes is a weighing process that results in imposition of the death penalty if the mitigating circumstances are not of sufficient weight to tip the balance toward leniency.

As previously noted, the Colorado Supreme Court interpreted its own constitutional provisions to grant greater protection than the comparable United States constitutional provision. Thus, *Walton* was not controlling. In contrast, this court has never extended greater protection to our citizens beyond the federal guarantees. See *State v. Schultz*, 252 Kan. 819, 826, 850 P.2d 818 (1993).

In addition, we reaffirm that death penalty cases are not controlling in hard 40 cases. The distinction between the two is obvious. The death penalty as it existed prior to the decision in *Furman v. Georgia*, 408 U.S. 238, 33 L. Ed. 2d 346, 92 S. Ct. 2726 (1972), was held to be unconstitutional. The unconstrained discretion in imposing the death penalty constituted cruel and unusual punishment in

violation of the Eighth and Fourteenth Amendments. The states were required to provide " 'specific and detailed guidance' " and " 'make rationally reviewable the process for imposing a sentence of death.' " *Godfrey v. Georgia*, 446 U.S. 420, 428, 64 L. Ed. 2d 398, 100 S. Ct. 1759 (1980) (quoting *Proffitt v. Florida*, 428 U.S. 242, 253, 49 L. Ed. 2d 913, 96 S. Ct. 2960 [1976], and *Woodson v. North Carolina*, 428 U.S. 280, 303, 49 L. Ed. 2d 944, 96 S. Ct. 2978 [1976], respectively). Not so with a hard 40 sentence. In *State v. Bailey*, 251 Kan. 156, 171, 834 P.2d 342 (1992), we said: "[T]he finality and severity of the imposition of the death penalty, the hurdles the prosecution must clear if the death penalty is to be imposed are higher than in any other area of criminal law." The United States Supreme Court, in *Rummel v. Estelle*, 445 U.S. 263, 272, 63 L. Ed. 2d 382, 100 S. Ct. 1133 (1980), stated: "Because a sentence of death differs in kind from any sentence of imprisonment, no matter how long, our decisions applying the prohibition of cruel and unusual punishments to capital cases are of limited assistance in deciding the constitutionality of the punishment meted out to Rummel." Rummel was convicted of felony theft and sentenced to life imprisonment as a habitual offender. The Supreme Court has not allowed states to restrict the consideration of mitigating circumstances when imposing the death penalty. However, the Court in *Walton* said:

"So long as a State's method of allocating the burdens of proof does not lessen the State's burden to prove every element of the offense charged, or in this case to prove the existence of aggravating circumstances, a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency." 497 U.S. at 650.

The trial court's weighing of the aggravating and mitigating circumstances is within its sound discretion and will not be disturbed on appeal absent an abuse of discretion. Here, the trial court considered the mitigating circumstance and found it did not outweigh the aggravating circumstance. There was no abuse of discretion and nothing further is required to impose the hard 40 sentence. Such imposition did not constitute cruel and unusual punishment as prohibited by the Kansas Constitution or the Eighth Amendment to the federal Constitution.

The judgment of the district court is affirmed.