No. 78,001

STATE OF KANSAS, *Appellee,* v. DAVID M. SPAIN, *Appellant.*
(953 P.2d 1004)

Opinion filed January 23, 1998.

*Ronald E. Wurtz*, chief attorney, Death Penalty Defense Unit, argued the cause and was on the brief for appellant.

*Edwin A. Van Petten*, assistant attorney general, argued the cause, and *Nels P. Noel*, county attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: David Spain appeals from the hard 40 sentence imposed after he entered a plea to one count of premeditated first-degree murder.

These essential facts are not in dispute: On March 17, 1995, David Spain and two other inmates escaped from the Haskell County Jail after Spain shot the dispatcher, Irvin Powell. Spain fired one shot from behind, which struck Powell in the neck. After being told by one of the other escapees to "[p]lug him again," Spain fired a second shot into Powell's chest. Powell died 3 days later from the bullet wounds inflicted by Spain. Spain entered a plea of no contest to one count of premeditated first-degree murder. He was sentenced to serve a mandatory term of imprisonment of 40 years. Additional facts will be stated as needed in discussion of the issues raised by Spain.

As a preliminary matter, Spain urges this court to reconsider its stated view that the reasoning in cases involving capital punishment is not fully applicable to hard 40 sentences. The position taken by the court up to this time is succinctly stated in *State v. Kingsley*, 252 Kan. 761, 788, 851 P.2d 370 (1993):

"As Justice McFarland noted in *State v. Bailey*, 251 Kan. 156, 834 P.2d 342 (1992), the general scheme for jury involvement in post-trial sentencing proceedings has developed in states which have a death penalty. 'Because of concerns . . . over the finality and severity of the imposition of the death penalty, the hurdles the prosecution must clear if the death penalty is to be imposed are higher than in any other area of criminal law.' 251 Kan. at 171. For this reason, cases which have arisen in the context of the death penalty are of limited precedential value for this court. 251 Kan. at 171."

In the meantime, the legislature created a death penalty by deleting references to the hard 40 from the act governing that penalty and inserting in its place references to the sentence of death. L. 1994, ch. 252.

Spain argues that maintaining two sets of rules for identically worded statutes, one set for hard 40 cases and the other for death penalty cases, "increases the potential for confusion and error" in these most complex and serious cases. The argument is succinctly stated in the following sentence from his brief: "When identically worded statutes are interpreted differently based only on the type of punishment that could flow therefrom, certainty is reduced and confusion enhanced." The State has chosen not to address this issue.

A body of case law has been developed for the hard 40, and those cases are governing precedents for the present case. Spain was not sentenced under K.S.A. 21-4624; thus, we need not go beyond established case law in order to adjudicate the case before the court. We will not anticipate whether the governing principles should be modified in a death penalty case. Such an opinion would be beyond determining the issue before us.

Spain first challenges the constitutionality of the hard 40 penalty because aggravating circumstances need not be proved beyond a reasonable doubt. He contends that he was sentenced under a statutory scheme that fails to satisfy the due process requirement for a clearly established standard of proof. According to appellant, "[t]his issue alone requires reversal of the 'Hard 40' sentence and remand with directions to sentence Mr. Spain to a life sentence with eligibility for parole in 25 years." His contention is based on the absence of an express standard in K.S.A. 21-4633 through 21-4640, which he describes as the reenactment of the hard 40 after the legislature used the original statutes for the death penalty.

K.S.A. 21-4641(2) provides: "K.S.A. 21-4633 through 21-4640 shall be applicable only to persons convicted of crimes committed on or after July 1, 1994." K.S.A. 21-4635 states, in pertinent part:

"[I]f a defendant is convicted of murder in the first degree based upon the finding of premeditated murder, the court shall determine whether the defendant shall be required to serve a mandatory term of imprisonment of 40 years or sentenced as otherwise provided by law.

"(b) In order to make such determination, the court may be presented evidence concerning any matter that the court deems relevant to the question of sentence and shall include matters relating to any of the aggravating circumstances enumerated in K.S.A. 21-4636 and any mitigating circumstances. . . .

"(c) If the court finds that one or more of the aggravating circumstances enumerated in K.S.A. 21-4636 and amendments thereto exist and, further, that the existence of such aggravating circumstances is not outweighed by any mitigating circumstances which are found to exist, the defendant shall be sentenced pursuant to K.S.A. 21-4638 and amendments thereto; otherwise, the defendant shall be sentenced as provided by law."

The State takes the position that the standard of proof for aggravating circumstances under 21-4635(c) is a preponderance of the evidence. The State contends that the current standard may be deduced from the evolution of the statute. When the hard 40 was authorized by the statute which the legislature used for the death penalty, the statute contained an express requirement that the jury, or the trial court in nonjury cases, find beyond a reasonable doubt that one or more aggravating circumstances existed and were not outweighed by mitigating circumstances. The current version of the statute, the one that authorizes the death penalty, retains the beyond-a-reasonable-doubt requirement. The statute that reauthorized the hard 40 does not contain the requirement. When the legislature eliminated the jury from the determination, it removed the express standard of proof. See K.S.A. 21-4635(c). The court generally follows the rule that "[w]hen the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the amendment." *State v. Clint L.*, 262 Kan. 174, Syl. ¶ 2, 936 P.2d 235 (1997). Applying this principle, the State concludes that proof beyond a reasonable doubt is no longer the standard. Instead, the State contends, a preponderance of the evidence will suffice.

In the recent case of *State v. Brady*, 261 Kan. 109, 929 P.2d 132 (1996), the defendant pled guilty to two counts of premeditated first-degree murder and was sentenced under K.S.A. 21-4638 to two hard 40 sentences to run consecutively. It does not appear from the opinion that the issue of the standard of proof was raised or given more than passing consideration. The court stated the standard of review as follows:

"When the sufficiency of the evidence is challenged for establishing the existence of an aggravating circumstance in a hard 40 sentencing proceeding, the standard of review is whether, after a review of all the evidence, viewed in the

light most favorable to the prosecution, a rational factfinder could have found the existence of the aggravating circumstance beyond a reasonable doubt." Syl. ¶ 4.

Implicit in this standard of review is a standard of proof beyond a reasonable doubt, but it seems clear that the question actually was not adjudicated.

Since the parties agree that "beyond a reasonable doubt" is no longer the standard, the question is whether that standard is necessary for findings that may affect sentencing but not conviction. The State cites *Farris v. McKune*, 259 Kan. 181, Syl. ¶ 4, 911 P.2d 177 (1996), for the proposition that facts established for the purpose of sentencing do not need to be proven beyond a reasonable doubt. In *Farris*, this court cited *McMillan v. Pennsylvania*, 477 U.S. 79, 91-92, 91 L. Ed. 2d 67, 106 S. Ct. 2411 (1986), and stated that the United States Supreme Court reasoned in *McMillan* that as long as guilt had been proven beyond a reasonable doubt, the burden of proof for sentencing circumstances could be lower than beyond a reasonable doubt. 259 Kan. at 192. The Court upheld the statute at issue in *McMillan*, which raised to 5 years the minimum sentence that could be imposed if the sentencing court found by a preponderance of the evidence that the defendant visibly possessed a firearm during the commission of certain felonies. 477 U.S. at 88.

Spain relies on *Specht v. Patterson*, 386 U.S. 605, 18 L. Ed. 2d 326, 87 S. Ct. 1209 (1967). In *McMillan*, the defendants contended that the Supreme Court's decision in *Specht* "require[d] the invalidation of the Pennsylvania statute challenged here." 477 U.S. at 88. The contention was rejected:

"[P]etitioners simply read too much into one of our previous decisions. Under the Colorado scheme at issue in *Specht*, conviction of a sexual offense otherwise carrying a maximum penalty of 10 years exposed a defendant to an indefinite term to and including life imprisonment if the sentencing judge made a post-trial finding that the defendant posed 'a threat of bodily harm to members of the public, or is an habitual offender and mentally ill,' *id.*, at 607. This finding could be made, without notice or any 'hearing in the normal sense,' based solely on a presentence psychiatric report. *Id.*, at 608. This Court held that the Colorado scheme failed to satisfy the requirements of due process, and that the defendant had a right to be present with counsel, to be heard, to be confronted with and to cross-examine the witnesses against him, and to offer evidence of his own.

"Petitioners suggest that had *Winship* already been decided at the time of *Specht*, the Court would have also required that the burden of proof as to the post-trial findings be beyond a reasonable doubt. But even if we accept petitioners' hypothesis, we do not think it avails them here. The Court in *Specht* observed that following trial the Colorado defendant was confronted with 'a radically different situation' from the usual sentencing proceeding. The same simply is not true under the Pennsylvania statute. The finding of visible possession of a firearm of course 'ups the ante' for a defendant, or it would not be challenged here; but it does so only in the way that we have previously mentioned, by raising the minimum sentence that may be imposed by the trial court." 477 U.S. at 88-89.

Spain argues that the hard 40 sentencing proceeding is more closely akin to the scheme of the Colorado Sex Offenders Act than to the Pennsylvania Mandatory Minimum Sentencing Act. In particular, he likens the Kansas hard 40 to the Colorado scheme in basing sentencing on a " 'finding of fact . . . that was not an ingredient of the offense charged.' " (Quoting *Specht*, 386 U.S. at 608-09.) In *Specht*, the findings that could affect sentencing were that defendant posed " 'a threat of bodily harm to members of the public, or is an habitual offender and mentally ill.' " 386 U.S. at 607 (quoting the Colorado Sex Offenders Act). In *McMillan*, the Supreme Court rejected the argument that the visible possession of a firearm was an element of the offense. The same can be said of the aggravating circumstances that were found by the trial court in the present case. Spain's reliance on *Specht* is misplaced.

In *Farris*, three defendants challenged the Kansas Department of Corrections' (KDOC) determination that the defendants' pre-guidelines behavior converted to a severity level 3 crime, making them ineligible for retroactive application of the Kansas Sentencing Guidelines Act, K.S.A. 21-4701 *et seq.* The determination made by KDOC was dependent upon the age of the victims. One of the defendants contended that KDOC must "prove beyond a reasonable doubt the facts it relied upon to convert the offender's crime." 259 Kan. at 192. We found no merit in the argument, stating: " 'Facts' established for use in sentencing require less evidentiary weight than facts asserted for conviction." 259 Kan. at 192. We conclude that *Farris* is controlling in the present case.

In the recent case of *State v. Cellier*, 263 Kan. 54, 948 P.2d 616 (1997), the constitutionality of K.S.A. 22-3302, competency to

stand trial, was challenged because it did not include an evidentiary standard of proof. We upheld the constitutionality of the statute, stating: "The legislature would not intend to promulgate an unconstitutional statute. If at all possible, statutes are to be interpreted in a constitutional manner. The only way to constitutionally interpret 22-3301 and 22-3302 is to find that their implicit evidentiary standard is a preponderance of the evidence standard." 263 Kan. at 69-70.

We find the rationale in *Cellier* persuasive. We conclude that the implicit standard of proof for aggravating circumstances under K.S.A. 21-4635(c) is preponderance of the evidence and, thus, we hold that K.S.A. 21-4635(c) is constitutional.

We next consider whether the risk of death to Elmer Briles was an aggravating circumstance of the murder of Irvin Powell within the meaning of the statute. Spain's conviction of premeditated first-degree murder is based on his killing Irvin Powell, who was on duty at the Haskell County Jail when the trio escaped. The trial court's finding that Spain knowingly or purposely created a great risk of death to more than one person was based on the kidnapping of another man many miles away and several hours later. The evidence showed that the escapees took a pickup truck and drove to Colorado. When one of the tires blew out, they stopped at a farmhouse. Spain showed the butt of his gun to one of the residents, Elmer Briles, who had come out of his house to help with the flat tire. The escapees took Briles and drove on in his car. In a statement given to law enforcement authorities, Spain said that Doug Winter, one of the other escapees, "in some way had threaten[ed] Elmer. I remember Elmer asking me not to let him get hurt. I promised him he would not. I even got a gun from Doug & took out the bullets so Elmer would not get hurt." The escapees bought gas and beer with money taken from Briles. Spain also told law enforcement officers that "3 or 4 hours later [he] let [Briles] out when police started chasing" them.

Spain contends that "any danger posed to the Colorado man was not sufficiently tied to the killing of the Haskell County jailer to legally constitute an aggravating circumstance under K.S.A. 21-

4636(b)." Spain quotes *State v. Brady*, 261 Kan. at 113, where the court stated:

" 'Thus, a trial court may impose a hard 40 sentence for a first-degree murder conviction if the defendant knowingly or purposely killed more than one person in the course of the charged murder, or if the defendant knowingly or purposely created a great risk of death to more than one person *in the course of the charged murder.*' " (Emphasis added by defendant.)

Although Spain has stated this issue in terms of the sufficiency of the evidence, it is a question of law rather than of fact. His contention is that the risk to Elmer Briles occurred "in a wholly different incident, separated from the homicide by a state line, time, distance and the intervening event of a flat tire." Thus, this issue is one of statutory interpretation, and this court's review is unlimited. See *State v. Arculeo*, 261 Kan. 286, Syl. ¶ 1, 933 P.2d 122 (1997).

With regard to Spain's reliance on *Brady*, it first should be noted that the language quoted from that opinion was not formulated with this issue in mind. The principal question in *Brady* involved the aggravating circumstance at issue here, that "[t]he defendant knowingly or purposely killed or created a great risk of death to more than one person." K.S.A. 21-4636(b). The question in *Brady*, however, was whether the aggravating circumstance could be used to enhance the penalty for each killing in a double homicide. It was undisputed that the killings occurred in the same course of conduct; in fact, they occurred only moments apart as the victims were lying close together on the floor. Thus, when the court wrote that the aggravating circumstance may be applied when risk of death is created for more than one person in the course of the charged murder, it alluded to the risk to one victim in the course of the charged murder of the other, and vice versa.

In addition to *Brady*, Spain also cites *State v. Cox*, 258 Kan. 557, 908 P.2d 603 (1995). Cox was convicted of aggravated robbery, conspiracy to commit robbery, and felony murder arising from the carjacking and shooting death of Marcus Smith. Cox was sentenced to life imprisonment for the felony murder, and the sentencing court "granted an upward departure on the other two offenses." 258 Kan. at 559. In other words, a hard 40 sentence was not at

issue and the enhanced sentences were not for the killing. The court affirmed the felony-murder conviction and sentence. It affirmed the other convictions but vacated the two sentences under the Kansas Sentencing Guidelines Act. As its basis for vacating the aggravated robbery sentence, the court held that "K.S.A. 1993 Supp. 21-4716(b)(2)(B) requires that only the defendant's individual conduct during the commission of the current offense be reviewed when considering the imposition of a departure sentence." 258 Kan. at 559. With regard to the conspiracy to commit robbery sentence, the court held that "a killing resulting in a conviction of felony murder may not be used, under the facts of this case, as the basis for an upward sentence departure." 258 Kan. at 559.

Spain seeks to analogize *Cox* to the present case on the ground that, in each, the trial court based enhancement of sentence on events that were insufficiently related to the offense. In this broad sense, Spain is correct. The analogy, however, does not hold up under close inspection, and *Cox* cannot be said to be a controlling authority for the present case. Examination of the statutes governing Cox's sentences shows that they defy close comparison with K.S.A. 21-4636. K.S.A. 1993 Supp. 21-4716 provided, in part:

"(b)(2) . . . [T]he following nonexclusive list of aggravating factors may be considered in determining whether substantial and compelling reasons for departure exist:

. . . .

(B) The defendant's conduct *during the commission of the current offense* manifested excessive brutality to the victim in a manner not normally present in that offense." (Emphasis added.)

As we have seen, the same restriction is not expressed in the hard 40 sentencing scheme, as set out in K.S.A. 21-4635 and 21-4636. As we also have seen, the court has interpreted K.S.A. 21-4636(b) as requiring some sort of connection between the aggravating circumstance and the homicide for which sentence is being imposed. The required connection, however, has never been the close one advocated by Spain. He would have the court adopt the rule that "the 'murderous act itself' places others in danger." The great risk of death to another need not be contemporaneous with the homicide, but it must be directly related to it.

One of the aggravating circumstances found by the jury was that Spain knowingly created a great risk of death to more than one person. The State cites *State v. Bailey*, 251 Kan. 156, 834 P.2d 342 (1992), in which a hard 40 sentence was imposed based on conduct that occurred over a period of time in several locations. Because the period of time is unspecified in *Bailey*, a somewhat detailed recitation of the events will be undertaken in order to convey some sense of the time involved. Bailey and three cronies stole a VCR from one apartment. Later in the evening, they took it to the apartment of defendant's great uncle, Sylvester Johnson, where they entered against Sylvester's will. He was told, " '[Y]ou going to die tonight.' " 251 Kan. at 158. Sylvester's friend, Rose Ann Johnson, was visiting him. The intruders hit her and took her purse; in the kitchen, one of the intruders stabbed Sylvester seven or eight times. Rose Ann and Sylvester were forced out of the apartment, and Sylvester was stabbed repeatedly. Then all six got into Rose Ann's car to drive to the bank. On the way, Sylvester was hit repeatedly, and Rose Ann was forced to commit oral sodomy. At an ATM, two of the intruders forced Rose Ann to get out of the car to obtain money. Two other persons who arrived to use the ATM were attacked, and one was dragged from his vehicle. In the melee, Sylvester escaped. He had been stabbed 27 times. Rose Ann then was taken to another bank where she attempted to withdraw money. At 4:30 the next morning, her nude body was found in a park. She had been stomped to death. "[H]er clothing and hair curlers were scattered over a wide area, her blood was found in more than one location." 251 Kan. at 164. "The manner of Rose Ann's death and the fact blood was found in more than one location indicates her death was the result of a lengthy . . . series of acts." 251 Kan. at 165.

*Bailey* is factually distinguishable from the present case. Rose Ann's murder, the charged murder, occurred at the culmination of the events in *Bailey*. Thus, the great risk of death to Sylvester was created during the events that led up to the charged murder. The charged murder in the present case occurred at the outset and was a completed act before the truck was taken, before the state border was crossed, before the tire blew out, and before Elmer Briles was

abducted. Perhaps even more importantly, in *Bailey*, the various forms of brutalization that ultimately resulted in Rose Ann's death were inflicted by the gang of intruders on both Sylvester and Rose Ann over a period of time. Thus, the great risk of death to Sylvester and the death of Rose Ann occurred during one course of conduct. This was the controlling factor in this court 's affirming the jury's finding the existence of the aggravating circumstance under K.S.A. 21-4636(b). We said:

"A continuous chain of events was in progress. There was ample evidence for the jury to conclude that Sylvester would have been killed along with Rose Ann if he had not escaped or if he did not die from his stab wounds prior to reaching the final destination. The conduct herein is well within the statutory language." 251 Kan. at 173.

We interpret K.S.A. 21-4636(b) to require a direct relationship between creating the great risk of death to another and the homicide. The risk need not be contemporaneous with the homicide, but it must occur in the course of committing the charged murder. In the present case, a period of time that included Spain's escaping from jail, shooting Powell, and kidnapping Briles might more precisely be termed a series of discrete transactions or events than one course of conduct. Although the events were loosely connected in that each figured in Spain's escape, they are too remote from one another in time, distance, and nature to be characterized as a course of conduct. The murder of Powell was completed long before Briles was kidnapped in Colorado. Thus, the trial court erred in finding that the risk of death to Briles was an aggravating circumstance in the murder of Powell.

We next consider whether there was sufficient evidence to establish that defendant committed the killing in order to avoid or prevent a lawful arrest or prosecution. The second aggravating circumstance found by the sentencing court was that Spain committed the murder in order to avoid prosecution. See K.S.A. 21-4636(e). Dennis Quimby, who was Sheriff of Haskell County at the time Spain killed Powell, testified that Spain was a prisoner in the jail on a charge of automobile theft. Quimby further testified that, "[t]o the best of [his] knowledge," Spain "had made a plea bargain agreement" and the prosecution was pending. In addition, the trial

court took judicial notice of "the file on case No. 95-CR-115, which is a file charging the defendant . . . with a charge of felony theft that was pending" at the time of the jail break. In making his findings on the record, the trial court stated: "The defendant says that there's no evidence that the reason he escaped was to avoid prosecution. That it's the State's obligation to prove beyond a reasonable doubt that the reason he escaped was to avoid prosecution. The Court finds it difficult, simply impossible, to find another answer."

Spain contends that the trial court's process of elimination in making its finding was in error and that the trial court overlooked his intoxication, which is the real reason he killed the jailer. The State suggests that Spain's intoxication might be considered with respect to mitigating circumstances but that it is not an alternative explanation for his killing Powell. Perhaps what the State is suggesting is that avoiding prosecution is a motive for killing, but that intoxication is not.

In *State v. Kingsley*, 252 Kan. at 790, the defendant argued that this aggravating circumstance required the State to prove that avoidance of arrest or prosecution was the dominant motive for the murder. Based on the court's analysis of the constitutionality of the aggravating circumstance in *Bailey*, 251 Kan. at 174, the court rejected Kingsley's argument. Thus, the State must show that a motive, not the dominant motive, for the murder was Spain's avoidance of prosecution. As is usual in establishing motive, circumstantial evidence may be all that is available, and reasonable inferences may be drawn from it.

The State established that Spain was in jail awaiting prosecution on a charge of felony theft, but it is not obvious from the evidence in the record on appeal that the offense Spain was planning to plead guilty to was a felony. The terms of the plea bargain are unknown. It was apparent from the evidence that the inmates of the Haskell County Jail enjoyed a remarkable amount of freedom, and it reasonably could be inferred that Spain's fleeing from the jail was in anticipation of incarceration in a more restrictive setting if he was going to plead guilty to a felony offense. This should have been a simple matter for the State to show, but, if it was shown in

the trial court, it is not obvious from the record on appeal. Even if the pending prosecution was to have resulted in additional jail time for Spain, rather than prison time, it could be inferred that he would want to avoid lengthening his stay. The standard of our review for the trial court's determination on aggravating circumstances, which are limited to those set out in K.S.A. 21-4636, is whether, after a review of all of the evidence, viewed in the light most favorable to the State, a rational factfinder could have found the existence of the aggravating circumstance by a preponderance of the evidence. Applying that standard, we conclude that the district court did not err by finding that Spain committed the killing in order to avoid prosecution.

Spain next contends that the trial court erred in finding the existence of only one mitigating circumstance. That circumstance was the domination and leadership of his codefendant, Winter. The trial court essentially found that Spain was a follower. Spain presented six mitigating circumstances—one statutory and five nonstatutory. He does not advocate a standard of review applicable to the trial court's rejection of the proposed mitigating circumstances. The State, on the other hand, advocates an incorrect one.

Mitigating circumstances, however, are not limited, and K.S.A. 21-4637 sets out eight circumstances which shall be considered but does not limit consideration to those circumstances. The standard of review as to the eight statutory mitigating circumstances differs from that for the aggravating circumstances in that they are viewed in a light most favorable to the defendant. Once a trial court determines that a mitigating circumstance exists, it must consider and weigh that circumstance against any aggravating circumstances found by the court. However, whether a circumstance not enumerated in the statute is to be considered as a mitigating circumstance is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion.

We first consider the one statutory mitigating circumstance presented by Spain—age. At the time of the murder, Spain was 32 years old. At the time of sentencing, he was 34. "The age of the defendant at the time of the crime" is one of the mitigating circumstances identified by the legislature in K.S.A. 21-4637. The

trial judge expressed the opinion that the legislature intended "there be established a special reason why . . . age should be considered." The examples he offered were when a defendant is quite young or older than most murder defendants. Spain's age, in the trial court's opinion, was in the middle and therefore of no consequence.

Spain contends that the statute should be given a plain reading rather than a reading which inserts a "special reason" qualification. In other words, he would read the statute to mean that the age of the defendant will be a mitigating circumstance in every case. He relies on the following principles stated in *State v. Thompson*, 237 Kan. 562, 566, 701 P.2d 694 (1985): "Penal statutes must be strictly construed in favor of the persons sought to be subject to them. The rule of strict construction simply means ordinary words are to be given their ordinary meaning. The statute should not be read to add that which is not readily found therein." Spain's argument ignores, however, the overarching principle that judicial interpretation must be reasonable and sensible to effect the legislature's intent and avoid absurd results. See *State v. Taylor*, 262 Kan. 471, Syl. ¶ 5; *State v. Le*, 260 Kan. 845, Syl. ¶ 4, 926 P.2d 638 (1996). There is no sense in having a mitigating circumstance that necessarily applies in every case. That nonsensical construction of K.S.A. 21-4637 is possible only if the focus is narrowed to subsection (g) of K.S.A. 21-4637 to the exclusion of the rest of the Act. K.S.A. 21-4637(g) states: "Mitigating circumstances shall include, but are not limited to, the following: . . . The age of the defendant at the time of the crime." Spain would have the court read this subsection in isolation and construe "shall include" to mean "must include." When other subsections of 21-4637 are examined, however, it becomes clear that only those subsections applicable in a particular case are to be included in the weighing process. For instance, subsection (a) states: "The defendant has no significant history of prior criminal activity." This is a potential mitigating circumstance. It could have no application where the defendant had a significant history of prior criminal activity. Further support for a sensible reading of 21-4637(g) is found in 21-4635(c): "If the court finds that one or more of the aggravating circumstances . . . exist and,

further, that the existence of such aggravating circumstances is not outweighed by any mitigating circumstances which are found to exist, the defendant shall be sentenced pursuant to K.S.A. 21-4638."

Given a sensible reading, K.S.A. 21-4637(g) cannot be construed to require the defendant's age to be a mitigating circumstance in every case. There is no error in the trial court's refusing to consider Spain's unremarkable age, 32 years at the time of the crime, as a mitigating circumstance in the present case.

Contribution to the crime by authorities. In announcing its findings, the trial court noted that the operation of the Haskell County Jail was too lax:

"The information that the Court has that was submitted as evidence surely supports the fact that the operation in the Haskell County Jail was not what it should have been at that point in time, and that's just a pretty mild statement of the circumstances that existed.

"The inmates were allowed too much freedom. Evidence was not as secure as it should have been. The inmates were not supervised as closely as they should have been when they were out of their cells working. And, quite frankly, sheriff's personnel—and it includes Mr. Powell—put too much faith and trust in the inmates. And that faith and trust may have resulted, to some degree, in the other shortcomings.

"The evidence that I've heard indicates that Mr. Powell, particularly, was prone to develop faith in these inmates, kind of a hope for their future success and became trusting in them. But, in effect, the defendant says they made it too easy and, therefore, should be considered a mitigating circumstance.

"The defendant has clearly established that the sheriff's department fell far short of the mark."

The trial court rejected the concept, however, of the "loose ship" being a mitigating circumstance:

"The fact that it was easy; the fact that they believed they could get away with it; the fact that Mr. Powell trusted them; those are things that shouldn't have happened, but they're simply not a mitigating circumstance. Court does not accept contribution by authorities as a mitigating circumstance."

Spain expresses his position as follows:

"This reckless behavior by the jailers . . . was a long-lasting, even intentional abdication of the very purpose of a jail. The degree of participation by the government in the conditions which permitted the drunkenness and access to weap-

ons is so high that it simply must be considered to have contributed to the crime itself."

Spain likens this to the mitigating circumstance defined in K.S.A. 21-4637(c): "The victim was a participant in or consented to the defendant's conduct." The State counters that, "[i]f anything, [Spain] has demonstrated that he cannot be trusted with his freedom and deserves no leniency." We find no abuse of discretion by the trial court.

Lack of violent prior convictions. The trial court made some insightful comments on this proposed mitigating circumstance:

"It should be noted that one of the statutory mitigating factors is that the defendant has no significant history of prior criminal activity.

"Now, a review of the defendant's criminal history reveals that he could not make this claim, as he had many prior convictions including criminal damage to property, burglary of a dwelling, theft of a firearm, forgery, burglary of an automobile, and others.

"The defendant's criminal history really falls in between the two, the statutory mitigating circumstance and of no significant criminal history and a statutory aggravating circumstance.

"The first statutory aggravating circumstance was that the defendant was previously convicted of a felony in which the defendant inflicted great bodily harm, disfigurement, dismemberment, or death on another.

"That's over on the left or over on the right. Whichever side you wanted to put it, it's an extreme. And that makes it an aggravating circumstance. It doesn't exist in this case. Another statutory extreme over on the other side.

"Defendant just doesn't have any significant criminal history. What the defendant has shown us here today is he's somewhere in the middle, in between these two. Not real bad, hasn't previously hurt or maimed anybody; but not real good, he's got quite a record.

"Burglary of a dwelling was a significant crime even if nobody was home. Then there's burglary of [a] dwelling, probably a business or something of that nature, plus the other crimes. There was quite a list, starting along time ago.

"The defendant simply has not carried the burden to establish this to be a mitigating factor, and the Court cannot accept it as such."

Spain argues that instead of eliminating his prior criminal record from consideration because it fit within neither of the statutorily defined circumstances, the trial court should have included it in the process of weighing aggravating and mitigating circumstances. Spain is not specific about how his criminal record should be worked into the equation. In this case, the trial court found that

Spain's record was somewhat voluminous but devoid of harm to persons and that it did not qualify as either a mitigating or aggravating circumstance. Because it lay somewhere in the middle ground between the two, its weight, even if included in the weighing process, would not alter the balance. There is no abuse of discretion by the trial court.

Acceptance of responsibility. Prior to sentencing him, the trial judge gave Spain an opportunity to address the court. Spain stated: "It's more to the family. I'm sorry for their loss. I wish I could take it back and bring him back, but I can't. I'm sorry." With regard to this statement qualifying as a mitigating circumstance, the trial court stated:

"I think that he can be given credit for having stood up and said, I committed the crime. And he's indicated today, here before this crowd, his remorse for having committed the crime.

"I am unable to find that because a person, after he's caught, enters into an agreement with the State which shows him to—under which he enters a plea of guilty or no contest and receives benefits of whatever nature, and says I'm sorry. I'm unable to find that as a mitigating factor. It's something that a person should do.

"But it doesn't move him to the right or to the left very far. It's something that commonly happens, it's not exceptional. It's not unusual. The Court finds that the defendant has failed to establish this factor to be a mitigating circumstance."

On appeal, Spain relies on *Hitchcock v. Dugger*, 481 U.S. 393, 398-99, 95 L. Ed. 2d 347, 107 S. Ct. 1821 (1987), for the proposition that it is "unconstitutional in a death penalty case to limit by either statute or instruction the sentencer's consideration of relevant mitigation evidence." The State agrees that in a death penalty case the trial court cannot "decline to consider any circumstance that may be in mitigation," citing *Eddings v. Oklahoma*, 455 U.S. 104, 71 L. Ed. 2d 1, 102 S. Ct. 869 (1982). To bring its reasoning more closely in line with the Supreme Court death penalty cases, the trial court would only need to have recognized that an expression of remorse could be considered as relevant mitigation evidence for the purpose of weighing mitigating against aggravating circumstances. However, the trial court is not required to do so in a hard 40 case, and we cannot say that failure to do so is an abuse of discretion. The decision to impose a hard 40 sentence is made

by weighting and weighing mitigating and aggravating circumstances rather than by counting them; thus, even if it were considered, the outcome is unlikely to be affected one way or the other by a featherweight mitigating circumstance such as Spain's apology to the victim's family.

The final issue raised by Spain is the weighing of the aggravating and mitigating circumstances by the district court. As previously noted, once its determination of aggravating and mitigating circumstances has been made, the trial court's task is to determine whether the mitigating circumstances outweigh the aggravating circumstances. K.S.A. 21-4635(c). In the present case, the trial court was of the "opinion that the mitigating circumstances do not outweigh the aggravating circumstances."

Spain seems to be offering two arguments within the framework of this issue. First, he reiterates his disagreement with the trial court's determination of aggravating and mitigating circumstances. Determined the way Spain advocates, there are no aggravating circumstances and the mitigating ones necessarily predominate. Second, he seems to be drawing a distinction between weighing aggravating and mitigating circumstances and weighing evidence of aggravating and mitigating circumstances. Again, he relies principally on *Eddings v. Oklahoma*, 455 U.S. 104. The State points out that the issue in *Eddings* was whether the trial court erred in refusing as a matter of law to consider the 16-year-old defendant's violent and miserable upbringing and his severe emotional disturbance. It was in this context and after deciding that it was error that the Supreme Court stated: "On remand, the state courts must consider all relevant mitigating evidence and weigh it against the evidence of the aggravating circumstances." 455 U.S. at 117. The procedure followed by the trial court in the present case does not seem to be inconsistent with the Supreme Court's direction.

Here, the trial court erred in finding that the risk of death to Briles was an aggravating circumstance; thus, only one aggravating circumstance remains to be weighed against the one mitigating circumstance. We therefore vacate the sentence and remand for resentencing.

LOCKETT, J., not participating.

RICHARD W. WAHL, Senior Judge, assigned.