No. 86,230

STATE OF KANSAS, *Appellee*, v. EDGAR LIVINGSTON, *Appellant*.

(35 P.3d 918)

Opinion filed December 14, 2001.

*Cory D. Riddle*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Terra D. Morehead*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, C.J.: Edgar Livingston was charged with one count of first-degree murder (K.S.A. 21-3401) and two counts of rape (K.S.A. 2000 Supp. 21-3502). Defendant and the State entered into a plea agreement whereby: (1) defendant would plead guilty to first-degree murder; (2) the two rape charges would be dismissed; (3) the State would not seek the death penalty; and (4) both sides reserved the right to comment as to the appropriate sentence to be imposed. Prior to the sentencing, the State filed a motion requesting a hard 50 sentence. The district court imposed a hard 50 sentence pursuant to K.S.A. 2000 Supp. 21-4635. De-

fendant appeals therefrom, contending the record herein provides an insufficient legal basis for its imposition.

## FACTS

Relatively few factual details of the crime are included in the record. At the plea hearing, Terra Morehead, assistant district attorney, recited the following facts in support of the guilty plea:

"Judge, the evidence would be that on February 10th of 2000, Edgar Livingston came to the Wyandotte County Sheriff's Department and asked to speak to someone in the office. Lieutenant Dennis Davis with the Sheriff's office made contact with Mr. Livingston. He indicated that he had some information about a homicide. Lieutenant Davis began talking to Mr. Livingston, and Mr. Livingston spontaneously told Lieutenant Davis that he had killed a woman in his apartment at 2724 North 8th Street in Kansas City, Kansas, in Wyandotte County. Police did respond to that address, and did enter the dwelling, and did locate the nude body of a woman who was later identified as Audrey Lowery, and she was deceased. A full taped statement was later taken from Livingston following his *Miranda* warning. He waived the *Miranda* warning and agreed to give a statement. He told police that he and Ms. Lowery had been engaged in narcotic activity, and they got involved in — in an argument, at which time he tied her up with a necktie, and he then had nonconsensual sex with her twice. Ms. Lowery threatened to alert the police, knowing that he was on — already on parole for attempted rape; and Mr. Livingston then produced a claw hammer and struck her in the head numerous times. Mr. Livingston was unaware of how many times he had actually struck her. An autopsy revealed that at least nineteen blows to the head had occurred. And if this case proceeded to trial, that's the evidence that the State would present for the charge of first degree murder."

Immediately thereafter the following exchange occurred between the court and the defendant:

"THE COURT: Okay, thank you. Mr. Livingston, I will ask you — you just heard what Ms. Morehead had to say about what she believes the evidence would be and what she believes the State is prepared to prove. Do you generally agree that those are the facts of this case?

"MR. LIVINGSTON: Yes sir. I — I — when this happened, I was on drugs, and I didn't know what I was doing; and I'm truly sorry about what happened, but I can't — can't change it. I'm sorry that I did it, and I don't — I don't think I deserve that much time. I ain't no bad person, and I don't think I'm a killer.

"THE COURT: Okay. You agree that those — those events, as Ms. Morehead described them, did, in fact, occur?

"MR. LIVINGSTON: Yes sir."

The court then accepted defendant's plea of guilty.

In its request for the imposition of the hard 50 sentence, the State listed the following aggravating factors:

"1. The defendant was previously convicted of a felony in which the defendant inflicted great bodily harm on another, to wit: on July 5, 1996, in Case Number 95CR1788, the defendant was convicted of Attempted Rape for tying up and raping his thirteen year old daughter, [M.L.].

"2. The defendant committed the crime [the murder] in order to avoid or prevent a lawful arrest or prosecution — after sexually assaulting the victim, Audrey Lowery, she threatened to report the incident to the police.

"3. The defendant committed the crime in an especially heinous, atrocious or cruel manner . . . . In consideration the State would note that the defendant inflicted mental anguish or physical abuse before the victim's death by sexually assaulting her and there were continuous acts of violence begun before or continuing after the killing in that the defendant administered at least 19 blows, primarily to the skull of the victim, with a claw hammer."

At the sentencing hearing, the State called the victim in the attempted rape case as a witness. She stated that as she was coming out of the bathroom, defendant grabbed her, tied her hands behind her back, laid her down, and took off some of her clothes. She further stated defendant tried to rape her but stopped when the victim told him the rope was hurting her. Defendant then untied her and advised her to wash the rope marks off and not to tell her mother.

In support of its second factor, the State pointed to defendant's confession. According to the State, defendant said that one reason he killed the victim was that after he had forced her to have sexual intercourse with him, she threatened to call the police. As he was on parole, defendant knew he would be returned to prison. Defendant then took the claw hammer and killed the victim. It should be noted that the defendant's taped confession is not included in the record on appeal, nor was it offered or admitted at sentencing; however, the affidavit for application for warrant indicates that defendant stated the following during his taped confession: "Livingston advised that he engaged in a verbal argument with Lowery. He later tied her up with a necktie, and had non-consensual sex with her twice. Lowery threatened to alert police, and Livingston produced a claw hammer. He then struck her in the head numerous times."

As to the third factor, the State argued that striking the victim 19 times in the head with a claw hammer is an especially heinous, atrocious, or cruel manner of killing. The autopsy report was introduced and corroborated the massive multiple trauma to the head and various other injuries.

In mitigation, defense counsel argued that the victim was a prostitute and defendant had paid her for her favors. He further argued defendant killed the victim to prevent her from advising the police he had taken and used some of the victim's crack cocaine as opposed to the State's argument that the killing resulted from defendant's concern that the victim would report the rapes to the police. Defense counsel also claimed mitigation in defendant's having turned himself in to the sheriff's office the same day as the killing and that defendant "was not in his right mind due to the use of crack cocaine at the time." There is no evidence in the record supporting any of these claims other than those in the preceding sentence.

The court then stated:

"THE COURT: Thank you. Accordingly, the defendant is sentenced to the custody of the Secretary of Corrections for a term of life. I'm going to find that the Hard-50 sentence applies. The aggravating circumstances offered by the State, including a prior crime of violence, and a particularly cruel and heinous manner in which this crime was committed, even if this killing wasn't done to cover up a rape, it was still particularly cruel and heinous.

"I find there are no mitigating circumstances which would outweigh these and therefore the Hard-50 is applicable."

Defendant contends the evidence was insufficient for the court to find that the aggravating factors outweighed the mitigating factors.

K.S.A. 2000 Supp. 21-4636 enumerates aggravating circumstances to be considered when imposing the hard 40 or hard 50 sentence. This statute was also amended in 1999 and provides in pertinent part:

"Aggravating circumstances shall be limited to the following:

"(a) The defendant was previously convicted of a felony in which the defendant inflicted great bodily harm, disfigurement, dismemberment or death on another.

. . . .

"(e) The defendant committed the crime in order to avoid or prevent a lawful arrest or prosecution.

"(f) The defendant committed the crime in an especially heinous, atrocious or cruel manner. A finding that the victim was aware of such victim's fate or had conscious pain and suffering as a result of the physical trauma that resulted in the victim's death is not necessary to find that the manner in which the defendant killed the victim was especially heinous, atrocious or cruel. In making a determination that the crime was committed in an especially heinous, atrocious or cruel manner, any of the following conduct by the defendant may be considered sufficient:

.    .    .    .

(3) infliction of mental anguish or physical abuse before the victim's death;

(4) torture of the victim;

(5) continuous acts of violence begun before or continuing after the killing;

.    .    .    .

(7) any other conduct in the opinion of the court that is especially heinous, atrocious or cruel."

K.S.A. 21-4637 addresses mitigating circumstances and provides:

"Mitigating circumstances shall include, but are not limited to, the following:

"(a) The defendant has no significant history of prior criminal activity.

"(b) The crime was committed while the defendant was under the influence of extreme mental or emotional disturbances.

"(c) The victim was a participant in or consented to the defendant's conduct.

"(d) The defendant was an accomplice in the crime committed by another person, and the defendant's participation was relatively minor.

"(e) The defendant acted under extreme distress or under the substantial domination of another person.

"(f) The capacity of the defendant to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of law was substantially impaired.

"(g) The age of the defendant at the time of the crime.

"(h) At the time of the crime, the defendant was suffering from posttraumatic stress syndrome caused by violence or abuse by the victim."

## STANDARD OF REVIEW

The parties cite an incorrect standard of review, relying on case law that was decided prior to our decision in *State v. Spain*, 263 Kan. 708, 714, 953 P.2d 1004 (1998).

In *Spain*, this court thoroughly discussed the standard of appellate review for a hard 40 sentence and concluded that the implicit

standard of proof for aggravating circumstances under 21-4635(c) is a preponderance of the evidence. More recently, this court has reaffirmed the holding in *Spain* and held that where the sufficiency of the evidence is challenged for establishing the existence of an aggravating circumstance in a hard 40 sentencing proceeding, the standard of review is whether, after a review of all the evidence, viewed in the light most favorable to the prosecution, a rational factfinder could have found the existence of the aggravating circumstance by a preponderance of the evidence. *State v. Murillo*, 269 Kan. 281, 287-88, 7 P.3d 264 (2000). Although K.S.A. 21-4635(c) was amended in 1999 to add the imposition of the hard 50 sentence for certain crimes committed after July 1, 1999, the amendment did not add any language which would have changed this standard of review. Therefore, the standard of review for a hard 50 sentence would be that which we have set out for a hard 40 sentence.

Where the trial court's refusal to find a mitigating circumstance under K.S.A. 21-4637 is challenged by the defendant, the standard of review is whether, after a review of all the evidence, viewed in a light most favorable to the defendant, a rational factfinder could have found by a preponderance of the evidence the existence of the mitigating circumstance. However, the trial court's decision regarding whether a circumstance not enumerated as mitigating in the statute was truly a mitigating circumstance is within the trial court's sound discretion and will not be disturbed on appeal absent abuse of discretion. *Spain*, 263 Kan. at 720.

In *State v. Bedford*, 269 Kan. 315, 332, 7 P.3d 224 (2000) (citing *State v. Spain*, 269 Kan. 54, Syl. ¶ 1, 4 P.3d 621 [2000]), we held that the trial court's weighing of the aggravating and mitigating circumstances is within its sound discretion and will not be disturbed on appeal absent an abuse of discretion.

## DISCUSSION

For its first aggravating factor the State contends the prior attempted rape conviction is sufficient to establish a prior crime wherein defendant was convicted of inflicting great bodily harm

on another person. See K.S.A. 2000 Supp. 21-4636(a). Defendant argues no great bodily harm was shown by the evidence herein.

In *State v. Gideon*, 257 Kan. 591, 894 P.2d 850 (1995), the defendant argued there was insufficient evidence to support the trial court's finding of the aggravating circumstance that he was previously convicted of a crime in which he inflicted great bodily harm on another. In finding this aggravating circumstance, the court relied on the defendant's 1983 conviction for rape and aggravated sodomy. Specifically, Gideon argued that the crime of rape was insufficient to constitute great bodily harm and that there was no evidence that he inflicted great bodily harm above and beyond the crime of rape in the 1983 conviction.

We concluded that either conviction was sufficient to support this aggravating factor, reasoning:

"Our criminal code does not define great bodily harm. In *State v. Dubish*, 234 Kan. 708, 715, 675 P.2d 877 (1984), this court stated:

'Bodily harm has been defined as "any touching of the victim against [the victim's] will, with physical force, in an intentional hostile and aggravated manner." [Citation omitted.] The word "great" distinguishes the bodily harm necessary in [the offense of aggravated battery] from slight, trivial, minor or moderate harm, and as such it does not include mere bruises, which are likely to be sustained in simple battery.'

This court has held that rape constitutes sufficient bodily harm to support a conviction of aggravated kidnapping, see *State v. Zamora*, 247 Kan. 684, 695, 803 P.2d 568 (1990), but this court has not expressed an opinion whether rape constitutes great bodily harm.

"We hold that the conviction of the crime of rape or aggravated criminal sodomy is sufficient to find that the defendant inflicted great bodily harm. We decline to hold there are different degrees of rape and aggravated criminal sodomy, as defendant suggests, so as to require a finding that a prior rape or aggravated sodomy was worse than 'ordinary' or inherent in the elements of the crime before the crime constitutes great bodily harm. Rape and aggravated criminal sodomy are extremely invasive offenses constituting great bodily harm." 257 Kan. at 614.

Here, defendant's prior conviction was the attempted rape of his 13-year-old daughter. Other than rope marks on her arms that the victim was able to wash off, it does not appear that defendant physically injured her. This situation is quite different from that in *Gid-*

*eon,* where the court noted the extremely invasive nature of the offense of rape. Here, father attacked daughter in the bathroom of their home, he pushed her to the floor and tied her wrists, and he began to remove her clothing and his own. Although this prior offense was certainly gross and repugnant, it cannot be said to have caused great bodily harm as that term was applied in *Gideon.* There was no physical invasion of the body.

Defendant is also correct in noting that the sentencing court did not find defendant had a prior felony that caused great bodily harm; rather, the judge found that this was a prior crime of violence. The statute requires more than a crime of violence to support this aggravating factor. We must conclude there is insufficient evidence to support this aggravating factor.

The second aggravating factor claimed by the State is that defendant killed the victim to avoid or prevent a lawful arrest or prosecution. As previously noted, defendant advised the arresting officers that he killed the bound victim to prevent her from alerting the police. The State's theory was that the victim would have reported the two rapes. Defense counsel argued that defendant took some cocaine from the victim during the incident and that it was this crime the victim threatened to report. There is no evidence or testimony that defendant took cocaine from the victim. Perhaps this dispute in theories is why the district court commented in its findings relative to aggravating circumstances: *"[E]ven if this killing wasn't done to cover up a rape, it was still particularly cruel and heinous."* The court made no finding the killing was done to prevent or avoid a lawful arrest or prosecution, and, accordingly, this statutory factor is not a basis for the imposition of the hard 50 sentence herein.

This brings us to the discussion of the district court's finding that the murder was committed in a "particularly cruel and heinous manner."

Defendant argues that the coroner made no determination as to which blow to the head killed the victim or whether she was conscious when the blows began. He also asserts that the fact that the victim may not have been conscious of her fate or conscious of her pain or suffering should be considered. Defendant acknowledges

in his brief that in *State v. Moncla,* 262 Kan. 58, 936 P.2d 727 (1997), this court affirmed the sentencing court's determination that 18 blows to the victim's head with a claw hammer was an especially heinous, atrocious, and cruel manner of killing the victim. Defendant seeks to distinguish *Moncla* on the basis that, unlike *Moncla,* no defensive injuries were seen on the victim's body. We note that the evidence in the case herein was that the victim's hands were bound. We find no merit in this attempt to distinguish *Moncla.* As to defendant's argument there was a lack of evidence regarding the victim's state of consciousness when the blows began, such evidence is unnecessary to a finding that the crime was committed in an especially heinous, atrocious, or cruel manner under the current and applicable form of K.S.A. 2000 Supp. 21-4636(f).

As previously stated, where the sufficiency of the evidence is challenged for establishing the existence of an aggravating circumstance in a hard 50 sentencing proceeding, the standard of review is whether, after a review of all the evidence, viewed in the light most favorable to the prosecution, a rational factfinder could have found the existence of the aggravating circumstance by a preponderance of the evidence. That standard has been met here in regards to K.S.A. 2000 Supp. 21-4636(f)(3), "infliction of mental anguish or physical abuse before the victim's death" — defendant confessed to binding the victim and raping her before beating her to death, and (f)(5), "continuous acts of violence begun before or continuing after the killing" — defendant confessed to raping the victim twice before striking her 19 times in the head with a claw hammer.

The record amply supports the sentencing court's determination that the killing was done in an especially heinous, atrocious, or cruel manner.

Defendant argues that the sentencing court erred in finding the aggravating factors outweighed the mitigating factors. As for mitigating factors, defendant's argument in his brief is stated as follows:

"Livingston had the psychotic disorder, NOS [psychotic disorder not otherwise specified], at the time of the incident. He was also 'not of a right mind' at the time of the incident because of crack cocaine. And finally, he turned himself in and confessed the morning after the incident.

"At sentencing, Livingston made the following statement:

'I know what I did was wrong and stuff and I'm sorry about what happened. I was smoking crack cocaine that night and I got hooked on something and I couldn't handle. I'm not no killer but I don't know, I got hooked to crack and I couldn't handle it. Something like that had happened to me before. And I'm sorry and I pray for her every night and I pray for myself. I'm sorry for what happened.'

"Livingston was a crack addict with a serious psychotic disorder. His disorder was controllable with medication. The only aggravating factor for sentencing him to the Hard 50 was the fact that he, in one continuous act, killed Ms. Lowery with a hammer. He started swinging a hammer and couldn't stop. His remorse was evidenced by the fact that he turned himself in the next morning. He didn't run. He didn't hide. He recognized that his drug induced, possibly psychotic, episode resulted in the tragic death of Ms. Lowery. He lost control of himself, but was willing to accept responsibility for his acts."

The evidence of psychotic disorder came from the report sent to the district court relative to the evaluation requested by the defense as to defendant's competency prior to trial. The report concluded defendant was competent to stand trial. There is nothing in the report indicating defendant was psychotic at the time of the slaying.

Livingston delivered 19 blows to the victim's head with a claw hammer while her hands were tied and after having, by his own admission, two acts of nonconsensual sex with her. Balanced against these stark facts are assertions regarding Livingston's alleged psychotic disorder and his feelings of remorse. The overwhelming disparity between 19 blows with a claw hammer and the weak mitigating factors presented by Livingston renders remand to the sentencing court unnecessary. Under such circumstances we can conclude with certainty that the aggravating factor herein was not outweighed by the claimed mitigating factors. The sentence imposed was proper.

One final matter remains. As noted by defendant:

"[T]he sentencing court did not follow K.S.A. 21-4635(c) and designate, in writing, the statutory aggravating circumstances which it found. The lack of a written statement in the journal entry should be corrected by a nunc pro tunc order, incorporating into the journal entry the findings made on the record by the court at the time sentence was pronounced. *State v. Moncla,* 262 Kan. at 79."

This was the procedure employed in *Moncla* to correct the omission and should be utilized herein in order that the one aggravating factor affirmed herein may be incorporated into the journal entry.

The judgment is affirmed, and the case is remanded for entry of a nunc pro tunc order.