NOT DESIGNATED FOR PUBLICATION

Nos. 122,274
122,275

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SAMUEL SCOTT TALLEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed December 18, 2020. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BRUNS and SCHROEDER, JJ.

PER CURIAM: On appeal Samuel Scott Talley claims his sentence is illegal, arguing the district court improperly scored his 2011 Missouri conviction for domestic assault in the second degree as a person felony to enhance the length of his sentence in this case under the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2018 Supp. 21-6801 et seq. Because we find the district court did not err in scoring his 2011 Missouri conviction as a person crime, we affirm Talley's sentence.

1

In July 2018, Talley was charged with one count of felony burglary and one count of misdemeanor theft. The district court granted Talley's request for bond and released him on a work release program. While participating in work release in November 2018, Talley failed to check back into the supervised facility. He was then charged in a second case with felony aggravated escape from custody.

On February 13, 2019, as a part of a global plea agreement, Talley pled no contest to the charges in both his July 2018 and November 2018 cases. The district court accepted Talley's pleas and found him guilty of all the crimes charged. A presentence investigation (PSI) report was ordered, and sentencing was set for a later date.

The plea agreement contemplated Talley's criminal history score would be C. However, the PSI report determined Talley's criminal history score was B because he had two prior person felony convictions: a 2000 Kansas conviction for aggravated battery and a 2011 Missouri conviction for domestic assault in the second degree. Talley did not challenge the previous Kansas conviction.

At the sentencing hearing, Talley objected to the 2011 Missouri conviction being scored as a conviction because he had participated in a Missouri program that, upon successful completion, caused the charges to be dismissed. Talley claimed the Missouri charges did not result in a conviction. The sentencing hearing was continued to allow the State time to verify the 2011 Missouri conviction.

At the next sentencing hearing on May 7, 2019, the State introduced evidence of Talley's 2011 Missouri conviction without any objection. Specifically, the State introduced a certified copy of the Missouri court's docket sheet, the final order showing Talley's guilty plea and sentence, the information, and the probable cause affidavit. The

2

documents admitted reflected Talley pled guilty to and was convicted of knowingly causing physical injury to a family or household member by pushing her to the ground, climbing on top of her, banging her head against the floor, and choking her with his hands until she passed out. The 2011 Missouri conviction resulted in a suspended sentence with Talley placed on probation for five years. Given these documents, the district court overruled Talley's objection to scoring the Missouri conviction as a person felony. It found Talley's criminal history score was B. However, before the district court could proceed with sentencing, Talley asked to withdraw his pleas. In response, the district court continued the sentencing hearing to address his motion to withdraw his pleas. At a hearing before the final sentencing hearing, the district court heard and denied Talley's motion to withdraw his pleas.

At the final sentencing hearing on August 14, 2019, Talley again objected to the 2011 Missouri conviction being scored as a person felony even though his attorney did not support the objection. The district court overruled the objection and found Talley's criminal history score was B. After denying Talley's motion for downward dispositional departure, the district court followed the terms of the parties' plea agreement and sentenced Talley as follows: 27 months in prison on the felony burglary charge; 12 months in jail on the misdemeanor theft charge to run concurrent with the burglary sentence; and 18 months in prison on the felony aggravated escape from custody charge to run consecutive to all other cases. The two cases were consolidated on appeal.

TALLEY'S CRIMINAL HISTORY SCORE IS B.

*Standard of Review*

The determination of an offender's criminal history score is governed by the KSGA. Whether a sentencing court has correctly interpreted and applied the provisions of the KSGA is a question of law which we review de novo. *State v. Keel*, 302 Kan. 560,

571-72, 357 P.3d 251 (2015). Likewise, whether a prior conviction was properly classified as a person or nonperson felony crime for criminal history purposes is a question of law subject to unlimited review. *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015).

*Discussion*

On appeal, Talley presents one issue—whether the classification of his 2011 Missouri conviction for domestic assault in the second degree as a person crime was properly scored. Specifically, he alleges his 2011 conviction most resembles Kansas' statute for aggravated battery. When comparing the elements of those two offenses, Talley argues the Missouri offense is broader and, as such, the district court erred when it failed to score his prior out-of-state conviction as a nonperson crime.

Conversely, the State asserts Talley applied the wrong Kansas statute to support his claim the Missouri conviction should have been classified as a nonperson crime. Specifically, the State alleges the 2011 Missouri statute contains various means to commit the crime of domestic assault in the second degree, and, to complete the proper analysis, it is imperative to establish which version of that crime Talley committed. Once the appropriate version is established, we must compare the elements of his 2011 Missouri offense to the elements of the comparable Kansas statute. The State argues Talley failed to do this, opting instead to compare the elements of each version of the Missouri offense to each of the elements for the crime of domestic battery in Kansas. Upon doing this, the State contends the most similar offense in Kansas is domestic battery, not aggravated battery. When comparing the elements of Talley's 2011 Missouri conviction to Kansas' domestic battery statute, one observes the Missouri offense is identical to or narrower than the Kansas offense. As such, the State argues the district court properly scored the prior 2011 Missouri conviction as a person offense.

Before determining whether Talley's prior out-of-state conviction is a person or nonperson crime, we must determine which legal framework to apply. At the outset, the parties correctly assert the 2019 amendments to K.S.A. 21-6811 do not apply in this case because Talley committed the underlying crimes before those amendments went into effect. See K.S.A. 2018 Supp. 21-6811(e)(3); see also *Keel*, 302 Kan. at 590 ("[T]he classification of a prior conviction . . . as a person or nonperson offense for criminal history purposes under the KSGA is determined based on the classification in effect for the comparable Kansas offense at the time the current crime of conviction was committed."). Because Talley committed the underlying crimes in July and November 2018, respectively, K.S.A. 2018 Supp. 21-6811 applies.

In considering an out-of-state conviction, the sentencing court makes two classifications after the State proves the existence of the prior conviction. First, the court determines under K.S.A. 2018 Supp. 21-6811(e) whether the prior conviction is a misdemeanor or a felony based on the law of the state where the defendant was convicted. "If a crime is a felony in the convicting jurisdiction, it will be counted as a felony in Kansas." K.S.A. 2018 Supp. 21-6811(e)(2)(A). Here, Talley's prior Missouri conviction was a felony—a fact Talley does not dispute on appeal. Second, the sentencing court determines whether the prior out-of-state conviction is a person or nonperson offense. K.S.A. 2018 Supp. 21-6811(e)(3). Talley contends the Missouri conviction was improperly classified as a person felony.

K.S.A. 2018 Supp. 21-6811(e)(3) requires the sentencing court to classify the prior out-of-state conviction as a person or nonperson offense by comparing the out-of-state offense to a similar Kansas statute in effect at the time the underlying crimes were committed. If there is no comparable Kansas crime, the sentencing court must classify the prior conviction as a nonperson crime. However, if there is a comparable crime and Kansas classifies it as a person crime, the out-of-state conviction must also be scored as a person crime. K.S.A. 2018 Supp. 21-6811(e)(3).

5

Our Supreme Court defined the term "comparable offense" as used in K.S.A. 2018 Supp. 21-6811(e)(3) in *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018). Specifically, it held the analysis of whether crimes are comparable requires a comparison of the elements of the out-of-state crime to the elements of the Kansas crime. If the out-of-state crime did not possess elements identical to or narrower than the elements of the Kansas offense to which it was being compared, the out-of-state conviction had to be classified as a nonperson offense. 307 Kan. at 561-62. Furthermore, in making the comparison between an out-of-state crime and a comparable Kansas crime, we must consider not only the plain language of the statute, but also the relevant statutory definitions and the interpretation of the statutory elements in state judicial opinions. See *State v. Gensler*, 308 Kan. 674, 685, 423 P.3d 488 (2018). The rule outlined in *Wetrich* also applies in this case as the Kansas Supreme Court decided *Wetrich* in March 2018—approximately four months before Talley committed the first underlying crime in this case. See *State v. Weber*, 309 Kan. 1203, 1209, 442 P.3d 1044 (2019) (finding *Wetrich* inapplicable to sentences finalized before *Wetrich* was decided).

Having determined the proper legal framework to apply, we turn to consider one additional wrinkle—which approach to utilize in comparing the elements of the Missouri statute to the elements of the comparable Kansas offense. The Kansas Supreme Court identified two different approaches in *Dickey*, 301 Kan. at 1037-38. First, it determined a sentencing court must use a categorical approach when the statute forming the basis of the defendant's prior conviction contains a single set of elements constituting the crime. The sentencing court then compares the elements of the prior conviction with the elements of the comparable crime in Kansas. If the elements of the prior conviction are identical to or narrower than the elements of the Kansas offense, the prior conviction may be counted as a predicate offense for sentencing enhancement purposes. 301 Kan. at 1037 (applying *Descamps v. United States*, 570 U.S. 254, 133 S. Ct. 2276, 186 L. Ed. 2d 438 [2013]).

6

Second, the *Dickey* court determined a sentencing court must apply a modified categorical approach when the statute forming the basis of the defendant's prior conviction is divisible—i.e., a statute which includes multiple, alternative versions of the crime. Under these circumstances, a sentencing court cannot conclude that a prior out-of-state offense constitutes a sentence-enhancing predicate offense by merely analyzing the elements of the out-of-state statute. Rather, the Kansas Supreme Court noted in these limited situations that a sentencing court is permitted to examine certain documents to determine which of the statute's alternative elements formed the basis of the defendant's prior conviction. Such documents include charging documents, plea agreements, jury instructions, verdict forms, transcripts of plea colloquies, and transcripts of findings of fact and conclusions of law from a bench trial. Once the alternative elements are determined, the sentencing court then compares those elements to the elements of the relevant Kansas offense. If the elements of the prior conviction are identical to or narrower than the elements of the comparable Kansas offense, the prior conviction may be counted as a predicate offense for sentencing enhancement purposes. See *Dickey*, 301 Kan. at 1037-39.

Now that both the proper legal framework and the appropriate approach have been determined, we turn to the merits. Talley's PSI report shows he was convicted of domestic assault in the second degree in violation of Mo. Rev. Stat. § 565.073. The 2011 version of this statute provides:

> "1. A person commits the crime of domestic assault in the second degree if the act involves a family or household member or an adult who is or has been in a continuing social relationship of a romantic or intimate nature with the actor, as defined in section 455.010, RSMo, and he or she:
> (1) Attempts to cause or knowingly causes physical injury to such family or household member by any means, including but not limited to, by use of a deadly weapon or dangerous instrument, or by choking or strangulation; or

(2) Recklessly causes serious physical injury to such family or household member; or

(3) Recklessly causes physical injury to such family or household member by means of any deadly weapon.

"2. Domestic assault in the second degree is a class C felony." Mo. Rev. Stat. § 565.073 (2011).

As Mo. Rev. Stat. § 565.073 (2011) contains several alternative means to commit the same crime, the statute is divisible. See *United States v. Doyal*, 894 F.3d 974, 975-77 (8th Cir. 2018) (applying Missouri state law and finding 2004 version of Mo. Rev. Stat. § 565.073—which is identical to the 2011 version—divisible). As the PSI report does not indicate the alternative for which Talley was convicted, the district court had to apply the modified categorical approach. The modified categorical approach allowed the State to provide limited documents from the 2011 Missouri case file for the district court to determine under which subpart of the statute Talley was convicted. The State provided the district court with four relevant documents: a certified copy of the Missouri court's docket sheet; the final order showing Talley's guilty plea and sentence; the information, i.e., charging document; and the probable cause affidavit. The documents established Talley pled guilty to and was convicted of the first alternative: knowingly causing physical injury to a family or household member by pushing her to the ground, climbing on top of her, banging her head against the floor, and choking her with his hands until she passed out. See Mo. Rev. Stat. § 565.073.1(1) (2011).

Talley now asserts Mo. Rev. Stat. § 565.073 (2011) is indivisible and the closest Kansas offense for comparison is aggravated battery, as defined in K.S.A. 2018 Supp. 21-5413(b), when he committed domestic assault in 2011. In comparing each subsection of each statute, Talley asserts that all the elements of the Missouri statute are broader than the Kansas statute and, as such, the district court had to find the prior Missouri conviction could not be scored as a person crime. On the other hand, the State argues Mo. Rev. Stat. § 565.073 (2011) is divisible and the supporting documents reviewed by the district court

reflect Talley was convicted of the first alternative version of the Missouri statute. The State urges us to compare the elements of the first alternative contained in the Missouri statute to the Kansas offense for domestic battery as defined in K.S.A. 2018 Supp. 21-5414(a)(1), which the State asserts is the most similar Kansas offense.

The State's approach is persuasive. Talley fails to recognize Mo. Rev. Stat. § 565.073 (2011) is divisible. We only need to find one felony in Kansas to be identical to or narrower than Talley's 2011 Missouri conviction to elevate his criminal history score to B. We are not required to perform a detailed analysis of multiple Kansas statutes once we have found a comparable statute. As explained below, we find K.S.A. 2018 Supp. 21-5414(a)(1) to be a comparable statute. This statute provides, in pertinent part:

> "Domestic battery is . . . [k]nowingly or recklessly causing bodily harm to a person with whom the offender is involved or has been involved in a dating relationship or a family or household member." K.S.A. 2018 Supp. 21-5414(a)(1).

Before proceeding further, we must briefly discuss Kansas' definitions for knowing or reckless conduct and for bodily harm. When we compare K.S.A. 2018 Supp. 21-5414(a)(1) to Mo. Rev. Stat. § 565.073 (2011), we find both require knowing conduct, with Kansas also allowing for the conduct to be done recklessly. The term "knowingly" is almost identically defined in both Missouri and Kansas. Compare Mo. Rev. Stat. § 562.016.3 (2011) ("A person 'acts knowingly', or with knowledge, [1] With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or [2] With respect to the a result of his conduct when he is aware that his conduct is practically certain to cause that result.") with K.S.A. 2018 Supp. 21-5202(i) ("A person acts 'knowingly,' or 'with knowledge,' with respect to the nature of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist. A person acts 'knowingly,' or 'with knowledge,' with respect to a

9

result of such person's conduct when such person is aware that such person's conduct is reasonably certain to cause the result."). This comparison supports our finding the statutes for the requisite intent are the same as or identical to each other.

When looking for Kansas' definition of the term "bodily harm," we see it is not statutorily defined; however, Kansas courts have long defined it as "'"any touching of the victim against [the victim's] will, with physical force, in an intentional[,] hostile[,] and aggravated manner."' *State v. Dubish*, 234 Kan. 708, 715, 675 P.2d 877 (1984); *State v. Livingston*, 272 Kan. 853, 859, 35 P.3d 918 (2001)." *State v. Robinson*, 306 Kan. 1012, 1027, 399 P.3d 194 (2017). This definition does not necessarily require that a victim experience physical pain or bodily impairment, just that a victim was touched in an offensive manner with physical force and without consent. Some Kansas cases support such an interpretation. See, e.g., *State v. Davis*, No. 116,749, 2017 WL 6625550, at *3 (Kan. App. 2017) (unpublished opinion) (finding Oregon statute criminalizing throwing bodily substances at corrections officers comparable to Kansas crime of battery); *State v. Day*, No. 113,171, 2015 WL 7190602, at *3 (Kan. App. 2015) (unpublished opinion) (evidence of defendant intentionally spitting on law enforcement officer supported battery conviction).

With these two definitions in mind, we direct our attention to the more comparable statute as the State indicates, K.S.A. 2018 Supp. 21-5414(a)(1), which, again, provides in pertinent part:

> "Domestic battery is . . . [k]nowingly or recklessly causing bodily harm to a person with whom the offender is involved or has been involved in a dating relationship or a family or household member."

When comparing the elements of Mo. Rev. Stat. § 565.073.1(1) (2011) to the elements of K.S.A. 2018 Supp. 21-5414(a)(1), it becomes clear the Missouri statute is

identical to or narrower than its Kansas counterpart. First, we must analyze the level of culpability included in both statutes. The relevant Kansas statute allows for domestic battery to be committed either knowingly or recklessly, while the relevant Missouri provision provides that domestic assault in the second degree be done knowingly. The Missouri provision is necessarily identical to or narrower than the Kansas version for two reasons: (1) As noted above, Kansas and Missouri define knowingly almost identically; and (2) in Kansas, knowingly necessarily encompasses anything that is done recklessly. See K.S.A. 2018 Supp. 21-5202(c) ("Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged. If recklessness suffices to establish an element, that element also is established if a person acts knowingly or intentionally."). So when analyzing Missouri's definition of knowingly in this context, the same must also be true.

Second, we must analyze Kansas' definitions of "dating relationship" and "family or household member" along with Missouri's definition of "family or household member." Kansas defines "dating relationship" as "a social relationship of a romantic nature." K.S.A. 2018 Supp. 21-5414(e)(1). When considering if such a relationship exists, courts consider the nature of the relationship, the length of time it existed, the frequency of interaction between the parties, and the time since the relationship was terminated, if applicable. K.S.A. 2018 Supp. 21-5414(e)(1).

Kansas defines "'family or household member'" as:

"[P]ersons 18 years of age or older who are spouses, former spouses, parents or stepparents and children or stepchildren, and persons who are presently residing together or who have resided together in the past, and persons who have a child in common regardless of whether they have been married or who have lived together at any time. 'Family or household member' also includes a man and woman if the woman is pregnant and the man is alleged to be the father, regardless of whether they have been married or have lived together at any time." K.S.A. 2018 Supp. 21-5414(e)(2).

11

Mo. Rev. Stat. § 455.010(5) (2011) defines "'[f]amily' or 'household member'" as:

"[S]pouses, former spouses, adults related by blood or marriage, adults who are presently residing together or have resided together in the past, an adult who is or has been in a continuing social relationship of a romantic or intimate nature with the victim, and adults who have a child in common regardless of whether they have been married or have resided together at any time."

Upon comparing these definitions, we observe Missouri's definition of "family or household member" is nearly identical to and appears to be narrower than Kansas' definitions of "dating relationship" and "family or household member." Both definitions of "family or household member" include the following identical terms: spouses, former spouses, adults who currently reside together or have resided together in the past, and adults who have a child in common regardless of whether they lived together in the past. Missouri's definition also encompasses Kansas' definition of "dating relationship" when it provides that a "family or household member" can include "an adult who is or has been in a continuing social relationship of a romantic or intimate nature with the victim." Compare Mo. Rev. Stat. § 455.010(5) (2011) with K.S.A. 2018 Supp. 21-5414(e)(1). Furthermore, Missouri's definition includes the term "adults related by blood or marriage," which encompasses parents, stepparents, children, and stepchildren as outlined in Kansas' definition of "family or household member." The only difference between the two definitions of "family or household member" is the fact Kansas' definition provides an additional class of potential victims Missouri's does not: a man and a woman if the woman is pregnant and the man is alleged to be the father, regardless of whether they have been married or have lived together at any time. With this distinction, we find the Missouri definition is narrower because it does not provide for such a scenario.

Finally, we compare Kansas' definition of "bodily harm" to Missouri's definition of "physical injury." As discussed above, Kansas' definition of "bodily harm" includes offensive touching of a victim using physical force without the victim's consent. See

12

*Robinson*, 306 Kan. at 1027. This does not necessarily mean the victim must sustain some sort of physical pain or physical impairment. For example, expelling bodily fluids like urine or saliva onto a victim could constitute "bodily harm" in Kansas even though such an act may not cause the victim pain or impairment. See *Davis*, 2017 WL 6625550, at *3; *Day*, 2015 WL 7190602, at *3. This is not true of Missouri's definition of "physical injury" because the Missouri courts have interpreted it as meaning a victim must sustain some sort of physical pain or impairment, no matter how slight. See, e.g., *State v. McGuire*, 924 S.W.2d 38, 39-40 (Mo. Ct. App. 1996) (finding in context of committing assault of law enforcement officer in third degree, defendant did not cause officer physical pain or cause officer to fear "'immediate physical injury'" by simply poking officer's chest). Thus, Missouri's definition of physical injury is narrower than Kansas' definition of bodily harm because Missouri's definition does not include the broad range of conduct associated with touching another person without that person's consent in a rude, insulting, or angry manner.

In conclusion, the elements of Mo. Rev. Stat. § 565.073.1(1) (2011) are identical to or narrower than K.S.A. 2018 Supp. 21-5414(a)(1). Because K.S.A. 2018 Supp. 21-5414(a)(1) is a person crime, see K.S.A. 2018 Supp. 21-5414(c)(1), and is the most comparable crime in Kansas to Talley's conviction under Mo. Rev. Stat. § 565.073.1(1) (2011), the Missouri conviction was properly scored as a person felony under the KSGA. The district court did not err in scoring Talley's 2011 Missouri conviction as a person felony to elevate Talley's criminal history score to B; therefore, Talley's sentence was not illegal.

Affirmed.